

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

| | |
|---|---|
| AUSTIN TUPLER, INC. et al., <br>Plaintiffs, <br>vs. <br><br>SUPPORT TRUCKING GROUP, et al, <br><br>Defendants. | **CASE NO.: 00-6223 CIV Gold** <br>Magistrate Judge Simonton |

### DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendants, Owners Association of Palm Beach and Broward County, Oscar Suarez, Victor Morales, Jose Matos, Ilceane Sforca, Jorge Valiente, Daniel Balazi, and Ossie Fernandez, by and through their undersigned counsel files this Motion to Dismiss, or in the alternative, Motion for Summary Judgment. Concurrently herewith, Defendants have filed a supporting Memorandum of Law, Concise Statement of Undisputed Material Facts and supporting affidavits with all exhibits.

In their Complaint, Plaintiff alleges that Defendants violated the Sherman Anti-Trust Act, 15 U.S.C. §§ 1-7, the Clayton Act, 15 U.S.C. §§ 12-26, and the Florida Anti-Trust Act of 1980 §§ 542.15-542.36, Florida Statutes (1999). Defendants are entitled to dismissal of Counts I and II, or in the alternative, to summary judgment as a matter of law on Counts I and II of the Plaintiff's Compliant. As to Count III, Defendants have filed an Answer and Affirmative Defenses.

## **Summary of Relevant Facts**

On or about Wednesday February 8, 2000, a number of independent owners and operators of dump trucks ceased to accept any new assignments from the brokerage companies. Historically, the brokerage companies provided work for the independent contractors at set rates. The rates for each job are determined either by a rate per ton or a rate per mile of the haul. The well adopted standard in the industry is to utilize a Rate Sheet dated 1980 as a guideline to bid the work. A number of independent owners and operators took issue with the outdated Rate Sheet. The gripes of the owners and operators centered around the fact that the price of gasoline, maintenance and the overall cost of living have dramatically increased since 1980. The owners and operators were hopeful that the brokers would consider these factors in bidding for construction projects. That hope was not fulfilled. In fact, many of the brokers continued to utilize the 1980 Rate Sheet, and on occasions, quote below those amounts. As a result of the brokers refusal to allot for the rising prices, the independent owners refused to accept any future assignments from those companies. The Owners and operators parked their dump truck vehicles in front of State Road 80, where Palm Beach Aggregates is located, a chief supplier of building material that the individual defendants regularly haul.

Approximately three days into the stoppage, the group consulted an attorney for legal representation as to any rights and/or liabilities their stoppage may cause. On February 12, 2000, the truckers held a meeting with all interested independent owners and operators to discuss and consider possible solutions to the problems with the brokerage companies. At that meeting, it was decided that the truckers would create an agreed on list of problems and try to resolve those problems with the brokerage

companies, including those involved in this lawsuit. Specifically, the truckers intended to discuss the use of new guidelines for assessing the price brokers paid independent truckers for their work performed.

Also at the February 12, 2000 meeting, the truckers decided that since there were over 150 truckers present, they would form a non-profit organization for the purpose of legal representation. The non profit organization was to allow elected officials of the organization to communicate directly with the attorney so as to avoid the additional costs and expenses associated with having one attorney communicate with each 150 truckers individually.

The following Monday, on or about February 14, 2000, the undersigned, on behalf of the truckers, forwarded a letter to each of the affected brokerage companies advising them of the problems the independent truckers were experiencing with the companies.

The following day, February 15, 2000, Defendants received this lawsuit via facsimile care of the undersigned. On or about February 24, 2000 Plaintiff filed their First Amended Complaint. Since the filing of this lawsuit, the efforts to finalize the formation of the non-profit organization have been discontinued so as to devote all of the truckers' resources to the preparation of the defense of this lawsuit.

### Count I - -Federal Anti Trust Violations

The elements necessary for recovery under the federal antitrust statutes are an agreement, conspiracy, or combination among defendants having the overall effect of restraining trade, injury to Plaintiff's business and property as a direct result, and damages that are capable of reasonable ascertainment and are not speculative.

Defendants contend that Plaintiff cannot meet these elements and thus cannot state a cause of action under the federal antitrust statutes. First, Defendants contend that Plaintiff's Complaint should be dismissed where the Plaintiff, TUPLER cannot meet the threshold requirement of standing. Defendants contend that the Plaintiff cannot establish that it sustained an "antitrust injury," that is, an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' alleged acts unlawful. In particular Defendants contend that Plaintiff is unable to sustain facts under the tremendous burden that somehow Defendants' activities had the anticompetitive effect of stifling competition. Plaintiff's burden is compounded by the undisputed fact that the stoppage was temporary, and that other individual truckers continued to work for the Plaintiff during the work stoppage thereby eliminating any harm that Plaintiff may have suffered.

Moreover, Plaintiff cannot establish that there was an overall effect on the market. There was no increase in the price of hauling, no increase to the consumer and the like. This is important in light of the fact Plaintiff, in order to establish a cause of action, must show harm to the competitive process, and not just harm to itself.

Second, Defendants contend that Plaintiff's Complaint must be dismissed on the basis the Plaintiff is unable to met the perquisite of pleading and proving specific damages. As indicated, as a prerequisite to maintaining a private antitrust action, Plaintiff must establish it suffered an injury to its business or property, as well as a causal relationship between the antitrust violation and the resulting injury. In addition, Plaintiff must also establish the *valuation* of plaintiff's alleged injury in terms of money damages with some degree of certainty. Where Plaintiff has failed to do so, the

Complaint must be dismissed.

Third, Defendants contend that in order to recover damages for a violation of the antitrust acts in question, plaintiff must prove the existence of an agreement which unreasonably restrains trade to the damage of the plaintiff. Sherman Anti-Trust Act, § 1, §15 U.S.C.A. Section (1). Since Plaintiff is unable to do so, the Complaint must be dismissed.

Fourth, Defendants have cited authority for the general proposition that where the purported violation is merely a broad sweeping guideline or a "how to" guide to bidding jobs, there can be no violation of antitrust statutes. Here, Defendants are independent truck drivers who accept work from brokerage companies. The well opted practice in the industry, according the supporting affidavits, is for the brokerage companies to price jobs pursuant to a price guideline. The guideline utilized is the 1980 Rate Sheet. Defendants questioned the continued use of the out dated Rate Sheet and requested a change so as to incorporate the increasing gas prices and related expenses in the bidding on future work. It is this conduct, the inquiry into the existing Rate Sheet that Plaintiff contends constitutes illegal price fixing. Defendants argue such a construction is contrary to precedent and the policy behind the antitrust statutes.

Defendants further challenge the Plaintiff's contention that the establishment of an Association establishes a monopoly. According to the affidavits, the organization was established for legal representation. Should the court prohibit the ability of the Defendants to organize for this purpose, the effect would be to deny the Defendants' their constitutional right to assembly.

Similarly, the Defendants attach Plaintiff's pleading that the organization

constitutes a monopoly where there is no evidence that the organization was established for an improper purpose. In support of its position, Defendants contend that parties to an illegal price fixing combination must be held to have intended the necessary and direct consequences of their acts, and they would not be heard to say that they did not intend to join the combination or to fix prices. United States v. Masonite Corporation, 62 S.Ct. 1070, 316 U.S. 265 (1942) rehearing denied 62 S.Ct. 1302, 316 U.S. 713.

To the extent that the allegations of Plaintiff's Complaint are found to be restraints on trade, Defendants contend that the restraint, if any, is not unreasonable in light of all the facts and circumstances. Defendants have cited a number of precedents for the well founded rule that despite the all encompassing language of the statutes in question, restrictions imposed by the antitrust statutes do not prevent the adoption of **reasonable means** to protect interstate commerce from destructive or injurious practices and to promote competition on a sound basis. Here, Defendants argue the restrictions are common practice in the industry and are needed.

Defendants further allege that the court may declare the purported restraint to be not unreasonable as a matter of law, and dismiss the claim without submitting the matter to a jury upon an finding that the alleged violation, "does not make economic sense." SCFC ILC, Inc. v. Visa U.S.A., Inc., 819 F.Supp 956 (Dist. Utah 1993).[1] As indicated, the restraints in question are commonly used, necessary to the industry and cause no competitive harm.

---

[1] *Affirmed in part, reversed in part on other grounds*, 36 F.3d 958, *cert denied*, 515 U.S. 1152, 115 S.Ct. 2600.

### Count II - Florida Anti Trust Violations

Count II of Plaintiff's Complaint alleges a violation of the Florida Anti Trust Act. The language of the state act is nearly identical to the relevant portions of the Sherman Antitrust Act. Thus, Defendants contend that for the reasons stated above, since Plaintiff's Sherman and Clayton's Act are untenable based on relevant, applicable federal law, so too, is Plaintiff's Florida antitrust action when the same federal law is applied.

Defendants further contend that the totality of Plaintiff's Complaint is moot in light of the fact that all of the individual Defendants and other independent truckers are back to work. Thus the status quo is protected, thereby removing the utility, if any, of this lawsuit.

WHEREFORE, for the foregoing reasons, the Defendants respectfully request that this Dismiss, or in the alternative, enter judgment in favor of the Defendants as to Counts I & II.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by Facsimile and U.S. mail to: **Edward Trent, Esq.,** Fisher & Phillips, LLP. 2300 Nationsbank Tower One Financial Plaza Fl. Lauderdale, Florida 33394-0005 (954/525-8739). on this 20 day of March, 2000.

STROLLA & SCOTT, P.A.
The Guaranty Building
120 South Olive Avenue Suite303
West Palm Beach, FL 33401
Phone: (561) 802-3132
Fax: (561) 802-3121

CATHLEEN SCOTT, ESQUIRE
Florida Bar No.: 135331