IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)



CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

AUSTIN TUPLER, INC. et al.,

            Plaintiffs,

vs.

SUPPORT TRUCKING GROUP, et al,

                Defendants.
_____/

**CASE NO.: 00-6223 CIV Gold**
Magistrate Judge Simonton

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Defendants, Owners Association of Palm Beach and Broward County, Oscar Suarez, Victor Morales, Jose Matos, Ilceane Sforca, Jorge Valiente, Daniel Balazi, and Ossie Fernandez, by and through their undersigned counsel files this Memorandum of Law in Support of its Motion to Dismiss, or in the alternative, Motion for Summary Judgment. Concurrently herewith, Defendants have filed a Concise Statement of Undisputed Material Facts.[1]

### PRELIMINARY STATEMENT

In its Complaint, Plaintiff alleges that Defendants violated the Sherman Anti-Trust Act, 15 U.S.C. §§ 1-7, the Clayton Act, 15 U.S.C. §§ 12-26, and the Florida Anti-Trust Act of 1980 §§ 542.15-542.36, Florida Statutes (1999). Defendants are entitled to dismissal of Counts I and II, or in the alternative, to summary judgment as a matter of law on Counts I and II of the Plaintiff's Compliant as stated below.

---

[1] State of Undisputed Facts will be cited as ["Facts P-___"] and references to Plaintiff's Complaint are cited as [Complaint P-___"].

40

I.    **PLAINTIFF TUPLER HAS NO STANDING TO ALLEGE AN ANTITRUST CLAIM UNDER THE SHERMAN ANTI-TRUST ACT AND THE CLAYTON ACT**

Count I of Plaintiff's Complaint alleges a cause of action for a violation of the Sherman Antitrust and Clayton Acts. The elements necessary for recovery under these sections are an agreement, conspiracy, or combination among defendants having the overall effect of restraining trade, injury to Plaintiff's business and property as a direct result, and damages that are capable of reasonable ascertainment and are not speculative. Defendants contend that Plaintiff cannot meet these elements and thus cannot state a cause of action under the federal antitrust statutes. First, Defendants contend that Plaintiff, TUPLER has no standing to raise such a dispute.

"The determination of standing is a preliminary one, to be answered only from an examination of the allegation of the Complaint." Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1499 (11th Cir. 1985) citing: Pan-Islamic Trade Corp. v. Exxon Corp (citations omitted).

Whether or not a Plaintiff has standing to raise an antitrust claim is a threshold issue. Hughs v. Halbach & Braun Industries, Ltd., 10 F.Supp.2d 491 (W.D. Pa. 1998).[2] When determining whether or not a claim for an antitrust violation can withstand judicial scrutiny, the Court is respectfully reminded that, "The antitrust laws were promulgated to protect **competition**, not **competitors**, and courts must analyze the question of antitrust injury **from the viewpoint of the consumer of the product or services at issue**." [Emphasis Added]. Assoc. General Contractors of Cal., Inc. v. Cal. State

---

[2] citing: Baglio v. Baska et all., 940 F.Supp. 819, 828 (W.D. Pa. 1996) affirmed 116 F.3d 467 (3d Cir. 1997).

Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897 (1983).[3]

Since courts look towards the viewpoint of the consumer, courts are "**hesitant to find standing exists**, because the antitrust statute permits recovery of treble damages." [Emphasis Added] Hughs at 494; citing: Gregory Marketing Corp. v. Wakefern Food Corp., 787 F.2d 92, 98 (3d Cir. 1986).[4]

In their cautious attempt to limit the situations where actions can survive for antitrust violations, the United States Supreme Court has observed that the lower federal courts have been, "virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that *might conceivably be traced to an antitrust violation*." [Emphasis Added] Hawaii v. Standard Oil Co., 405 U.S. 251, 263 n.14, 92 S.Ct. 885, 891 n.14 (19__).

While the Court has acknowledged that antitrust violations *may* cause harm to the Nation's economy, the Court has historically struck a balance between finding a cause of action to exist and finding the damages too remote. In achieving this balance, the courts have considered the broad and all encompassing language of the antitrust statutes, and yet, in the same vein, conceded that, "there is a point beyond which the wrongdoer should *not* be held liable." [Emphasis Added] Id.

The Court has expressly found that , "[i]t is reasonable to assume that Congress did not intend to allow every person *tangentially affected* by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or

_____

[3] Citing: Alberta Gas Chemicals, Ltd. v. E.I. Dupont De Nemours, 826 F.2d 1235, 1241 (3d Cir. 1987). Cert. Denied, 486 U.S. 1059, 108 S.Ct. 2830 (1988).

[4]*Cert. Denied.* 479 U.S. 821, 107 S.Ct. 87 (1986).

property." [Emphasis Added] <u>Associated General Contractors of California v. California State Council of Carpenters</u>, 459 U.S. 519, 534; 103 S.Ct. 897, 907 (1983).[5]

In making such a concession, the courts have adopted an analysis for determining "antitrust standing" which stems from an evaluation of the plaintiff's alleged harm, the alleged wrongdoing by the defendants and the relationship between the two. Precisely, in order to have standing, Plaintiff must past muster under a two-pronged test. First, the plaintiff must prove that he has suffered an antitrust injury; and second, plaintiff must prove that he is the most efficient enforcer of the antitrust laws. <u>Id.</u> at 494. Here, the Plaintiff TUPLER cannot even meet the first prong.

### A.    TUPLER Has Not Suffered An Antitrust Injury Entitling It To Antitrust Relief.

In this Circuit, the Plaintiff is said to have suffered an antitrust injury if the injured party  demonstrates not only an antitrust violation, but also an "antitrust injury," that is, an injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' alleged acts unlawful. <u>MCA Television Ltd. v. Public Interest Corp.</u>, 171 F.3d 1265 (11th Cir. 1999).[6]

Where Plaintiff cannot establish what harm or injury it suffered as a result of the Defendants alleged wrongdoing, ***the claim should be dismissed***. <u>Jefferson County Pharmaceutical Ass'n, Inc. v. Abbott Laboratories</u>, 656 F.2d 92 (5th Cir. 1981) [The existence of the facts demonstrating an injury is **critical** to establishment of cause of

---

[5]<u>Citing: Blue Shield of Virginia, Inc. v. McCready,</u> ___ U.S.___, ___; 102 S.Ct. 2240, 2247 (1982).

[6]  <u>Citing</u>: Sherman Act, § 4(a), as amended, §15 U.S.C.A.  15(a).

action.]; Clayton Act, § 1 et seq., §15 U.S.C.A.  12 et seq.[7]

In establishing that Plaintiff suffered the requisite form of injury, Plaintiff has the difficult burden of establishing that Defendants' action **_unreasonably harmed their competitive efforts_**. [Emphasis Added] American Key Corp. v. Cole Nat. Corp., 762 F.2d 1569 (11th Cir. 1985) [Harm to competition is a **necessary element** of all private antitrust suits under sections one and two of the Sherman Act.  Sherman Anti-Trust Act, §§ 1, 2, as amended, §§15 U.S.C.A.  1, 2.]

Plaintiff must demonstrate that  defendants' activities have the effect of **_stifling competition_**.[Emphasis Added] Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705 (11th Cir. 1984). "An antitrust Plaintiff **_must prove that challenged conduct affected the prices, quantity or quality of goods and services, not just his own welfare_**." [Emphasis Added] Baglio v. Baska, 940 F.Supp. 819, 827 (W.D. Pa. 1996). _affirmed_ 116 F.3d 467 (3d Cir. 1997) citing: Matthews v. Lancaster (Citations Omitted).

Furthermore, a private plaintiff can recover on an antitrust claim only where the loss, "stems from a competition-reducing aspect or effect of the defendant's behavior." Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 344, 110 S.Ct. 1884, 1894-

---

[7]_See,_ Florida Seed Co., Inc. v. Monsanto Co., 105 F.3d 1372 (11th Cir. 1997) [ Distributor suffered no "antitrust injury" when supplier terminated nonselective herbicide distributorship agreement following merger, and thus lacked standing to assert federal antitrust claims against supplier.] _See also,_ Todorov v. DCH Healthcare Authority, 921 F.2d 1438 (11th Cir. 1991) [In order to maintain antitrust action for treble damages, plaintiff must be able to show **more than an injury linked to a violation of the antitrust** laws; he must prove an "antitrust injury" which is injury of the type which the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful. **Indirectness of plaintiff's injuries and the operation of other independent effects weighs against affording plaintiff antitrust action;  indirectness of alleged injury also implicates the strong interest in keeping the scope of complex antitrust trials within judicially manageable limits, the importance of avoiding duplicative recoveries, and the danger of complex apportionment of damages.]**

95 (1990).

Here, Plaintiff alleges that the Defendants are wholly independent contractors that stopped working and refused to honor their contractual commitment to brokers including TUPLER. ( Complaint P-8, 15, 18). Plaintiff further alleges that Defendants' eleven day refusal to accept new job assignments caused other entities to stop doing business with TUPLER. (Complaint 22). Other than Plaintiff's mere recital at Paragraph 34 of "irreparable harm," **nowhere** in Plaintiff's complaint does TUPLER allege that the failure of the Defendants to accept future work lead to an increase in the price of hauling, or had **any** overall affect on the market in Palm Beach and/or Broward County. In fact, Plaintiff admits that there were other truckers who continued to work, hauling materials. Plaintiff attempts to claim the Defendants allegedly tried to coerce, intimidate and threaten the other independent truckers who continued to accept new assignments. It is undisputed that despite the Defendants decision to refuse future work assignments, there were several other truckers still hauling material. (Facts P-1 ); Affidavits of Jose Matos, Daniel Balazi, Eddie Perez, and Carlos Marcelo.

The vast majority of antitrust cases involve situations where the alleged wrongdoing results in a material change in price for goods and/or services. *See,* Amey, Inc. v. Gulg Abstract & Title, 758 F.2d 1486 (11th Cir. 1985) [ Litigant has standing since the company was within the market encompassed by the alleged competitive activity and suffered an injury in that they had to pay a higher price for title search legal services.] McClure v. Undersea Industries, Inc., 685 F.2d 1309 (11th Cir. 1982) [Private antitrust plaintiff must prove injury caused by antitrust violation in order to recover under

*6*

the Clayton Act.  Clayton Act, § 4, §15 U.S.C.A.  15.][8]

Here, Plaintiff has failed to plead that it was the Defendants' alleged wrongful conduct which caused any material change in the market. There is no allegation that the eleven (11) day stoppage drove up the price of hauling, or had any overall effect on the market. Plaintiff merely states that TUPLER lost contracts as a result of the Defendants' alleged wrongdoing, a far cry from stifling competition.

As indicated in <u>Baglio</u>, an antitrust Plaintiff must prove that challenged conduct affected the overall market competition, such as the prices, quantity or quality of goods and services, "not just his own welfare. " <u>Baglio</u>, 940 F.Supp. at 827.  Thus, any temporary effect on the Plaintiff's business in not sufficient.

Moreover, since the truckers were under no contractual obligation to perform work for TUPLER, their refusal to accept new work at unacceptable pay rates cannot be said to cause injury to the entire truck hauling industry. TUPLER's burden is made more cumbersome, as a number of other drivers remained at work and the quarry continued to remain open for twenty-four hours per day.

### B      The Damages Alleged in Plaintiff's Complaint Are Speculative And Too Remote To Establish Price Fixing

In order to sustain a cause of action for violation of the acts subject of this lawsuit, namely for price fixing, the Plaintiff has the burden of proving that there existed a combination and conspiracy which had the ***purpose and the effect of eliminating of***

---

[8]Sherman Anti-Trust Act, § 1 et seq., §15 U.S.C.A.  1 et seq.;  Clayton Act, §§ 1 et seq., 4, §§15 U.S.C.A. 12 et seq., 15.   . . . Antitrust requirement of "fact of damage" also called "impact" means that the antitrust violation must cause injury to the antitrust plaintiff. Sherman Anti-Trust Act, § 1 et seq., §15 U.S.C.A.  1 et seq.;  Clayton Act, §§ 1 et seq., 4, §§15 U.S.C.A. 12 et seq., 15.

*price competition between defendant and its competitors.* [Emphasis Added]. U.S.
v. FMC Corp., 306 F.Supp.1106 (E.D. Pa. 1969). *Supplemented at* 317 F.Supp 443.

Actionable antitrust injuries include only those injuries that result from
**interference with the freedom to compete**. Johnson v. University Health Services,
Inc., 161 F.3d 1334 (11th Cir. 1998) [ Physician did not suffer antitrust "injury" by virtue
of non-profit hospital's refusal to comply with alleged oral agreement to provide
physician with over $1 million to start her own private practice to compete with her
former employer, and thus, physician lacked standing to maintain antitrust claim against
hospital and employer].

Here, the damages alleged in the Complaint are too remote to sustain an action
for relief. The was no agreement enacted following the brief work stoppage. TUPLER
was free to continue to work with the other truckers who were still accepting job bids
during the stoppage. Although TUPLER may be able to allege it suffered some
inconvenience, such an allegation is a far leap from the tremendous burden of
establishing that the alleged price fixing scheme had the effect of eliminating
competition.

### C.     TUPLER's Complaint Must Be Dismissed Where TUPLER Has Not Plead Money Damages And Is Unable To Do So.

As indicated, as a prerequisite to maintaining a private antitrust action, TUPLER
must establish they suffered an injury to their business or property, as well as a causal
relationship between the antitrust violation and the resulting injury. In addition, TUPLER
must also establish the *valuation* of plaintiff's alleged injury in terms of money
damages with some degree of certainty. Sherman Anti-Trust Act, §§ 1, 2, 15 U.S.C.A.

§§ 1, 2; Clayton Act, § 4, 15 U.S.C.A. § 15.; National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602 (11th Cir. 1984).

Private antitrust liability requires a showing of a violation of the antitrust laws, fact of damage, and some indication of the **amount of damage**. Sherman Anti-Trust Act, § 1 et seq., §15 U.S.C.A. 1 et seq.; Clayton Act, §§ 1 et seq., 4, §§15 U.S.C.A. 12 et seq., 15. . . . Antitrust requirement of "fact of damage" also called "impact" means that the antitrust violation must cause injury to the antitrust plaintiff. Sherman Anti-Trust Act, § 1 et seq., §15 U.S.C.A. 1 et seq.; Clayton Act, §§ 1 et seq., 4, §§15 U.S.C.A. 12 et seq., 15;' Nichols v. Mobile Bd. of Realtors, Inc., 675 F.2d 671 (11th Cir. 1982).

Similarly the Court in Jot-Em-Down Store (JEDS) Inc. v. Cotter and Co., 651 F.2d 245 (5th Cir. 1981), held that in addition to establishing that there was an antitrust violation and that it actually caused him loss; the plaintiff must also establish the *amount of harm he suffered with sufficient certainty to enable trier of fact to assess damages*. [Emphasis Added] Id. Here, where there are no such allegations, Plaintiff cannot be said to have met its burden.[9]

Plaintiff, TUPLER's Complaint is utterly void of any allegation of their damages, except to recite boiler-plate language of their alleged irreparable harm. There is no allegation as to how TUPLER was irreparably harmed and to what extent.

---

[9] *See also* Malcolm v. Marathon Oil Co., 642 F.2d 845 (5th Cir.1981) [Private plaintiff proceeding under Clayton Act must prove a violation of the antitrust laws, cognizable injury attributable to the violation, and at least the approximate amount of the damage. Clayton Act, § 4, §15 U.S.C.A. 15]; *See,* Shumate & Co., Inc. v. National Ass'n of Securities Dealers, Inc., 509 F.2d 147 (5th Cir. 1975) [Even where there is a violation of the antitrust laws, a plaintiff must establish that he has been injured in his business or property as a prerequisite to maintaining a private suit.]

## II.   PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION UNDER FEDERAL ANTI TRUST STATUES WHERE IT CAN POINT TO NO AGREEMENT IN EXISTENCE WHICH RESTRAINS TRADE

In order to recover damages for a violation of the antitrust acts in question, plaintiff must prove the existence of an agreement which unreasonably restrains trade to the damage of the plaintiff.  Sherman Anti-Trust Act, § 1, §15 U.S.C.A. Section (1).

In order to recover damages for a violation of Section 1 of the Sherman Act, a plaintiff must prove three elements: (1) the existence of an agreement (2) which unreasonably restrains trade (3) to the damage of the plaintiff. Abadir & Co. v. First Mississippi Corp., 651 F.2d 422 (5th Cir. 1981).

Here, Plaintiff has attempted to allege that the truckers' eleven (11) day decision to accept no future assignments from the brokers constitutes an agreement to restrain trade. However, even if Plaintiff can establish the temporary existence of such a verbal agreement, the fact that the truckers have currently accepted assignments, and continue to do so, requires a finding that no such agreement presently exists. And assuming arguendo that such an agreement did exist, albeit briefly, the emergence of such a temporary agreement was so cursory that it could not be said to materially alter the competitive nature of the entire trucking market place.

If Plaintiff contends that the Defendants' request for a new method of bidding jobs, which included an increase in the per ton or per mile structure, created an "agreement," that argument is misplaced. As set forth more clearly in the affidavits of Jose Matos, Daniel Balazi, Eddie Perez, and Carlos Marcelo, the truckers never requested that the brokers set a price certain for all jobs. To the contrary, the truckers

*10*

requested that the brokers adopt a new, updated *guideline* which would allow for the consideration of increased fuel prices and the rising cost of living when bidding jobs. Ironically, the Plaintiff fails to acknowledge that the current method of bidding includes the Plaintiff's reliance on the 1980 Rate Sheet as a guideline.  This guideline was acknowledged by Erica Tomeau, a representative of SIBONEY Trucking, a similar brokerage company to the Plaintiff. Mr. Tomeau, as recently at February 10, 2000, offered the Defendants a ten percent (10%) increase based on the 1980 Rate Form. (See Affidavit of Daniel Balazi, Exhibit "C").

## III     BROAD GUIDELINES ACCEPTED BY THE INDUSTRY DO NOT CONSTITUTE PRICE FIXING

Plaintiff alleges that the request for a thirty percent (30%) increase based on the 1980 Tariff constitutes price fixing. This similar issue was considered by the District Court in New York. There, the court found that the broad guidelines which are commonly used in an industry **do not constitute price fixing and do not affect competition**. Jacobi v. Bache & Co., Inc., 377 F.Supp. 86 (S.D.N.Y.1974).[10]

In Jacobi, the court held that stock exchange guidelines which do not attempt to regulate the *exact* amount of compensation of registered representatives do not constitute price fixing. In so holding, the court reasoned that since the documents were used as a broad guidelines, and not used to achieve total conformity in wages or to reduce competition for services of registered representatives, they did not constitute an arrangement to fix prices or affect competition.

As set forth more fully in the Affidavits of Jose Matso, Daniel Balazi, Eddie

---

[10]*affirmed* 520 F.2d 1231, cert. den.  96 S.Ct. 784, 423 U.S. 1053.

Perez, and Carlos Marcelo, the brokers who brought forth this lawsuit regularly utilize a Rate Tariff Form in determining the price to quote for jobs. The individual Defendants proposed a change to the way that guideline was utilized which would allow for the consideration of increases in the cost of fuel and expenses related to owning and operating a truck.  It is doubtful the brokerage companies could function without some guideline in which to quote jobs. Similar to the rate sheet in question in the <u>Jacobs</u> case,  the guideline in dispute here was not designed to achieve total conformity in wages or to reduce competition for services of individual truckers or brokerage firms and therefore cannot be said to fix prices or affect competition.

## IV    THE PLAINTIFF'S COMPLAINT MUST BE DISMISSED IN FAVOR OF THE DEFENDANTS' RIGHT TO ASSEMBLY

The antitrust statutes in question do not prohibit the establishment of an association which is created to attempt to persuade the legislature or the executive to take particular action with respect to law that  would produce restraint or monopoly. <u>Greater Rockford Energy and Technology Corp. v. Shell Oil Co.</u>, 790 F.Supp. 804, (C.D. Ill. 1992)[11] In <u>Greater Rockerford Enercy</u>, the court stated that antitrust laws regulate business and not politics. <u>Id.</u>

Section 2 of the Sherman Anti-Trust Act expressly allow two or more persons to associate together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly.  It is not illegal for people to seek action on laws in the hope that they may bring about an

---

[11]affirmed 998 F.2d 391, rehearing and suggestion for rehearing en banc denied, certiorari denied 114 S.Ct. 1054, 510 U.S. 111, 127.

advantage to themselves and a disadvantage to their competitors. Eastern R. R.
Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523
(1992).[12]

Here, according the Affidavits of Jose Matso, Daniel Balazi, Eddie Perez, and
Carlos Marcelo, the purpose of the organization formed by the individual defendants
was for the purpose of legal representation and advice as to the problems encountered
when dealing with the Brokers.

## V.   THE PLAINTIFF'S COMPLAINT MUST FAIL WHERE THERE IS NO EVIDENCE OF MOTIVE

Plaintiff must be able to establish that the Defendants have the specific intent to
destroy competition or build a monopoly in order to state a cause of action under
Section 2, of the Sherman Antitrust act concerning the establishment of a monopoly.
It is only a concerted refusal to deal, with motive of fixing prices, that makes out a per
se antitrust violation. Tripoli Co. v. Wella Corp.,286 F.Supp. 264 (E.D.Pa.1968).[13]

Parties to an illegal price fixing combination must be held to have intended the
necessary and direct consequences of their acts, and they would not be heard to say
that they did not intend to join the combination or to fix prices.  United States v.
Masonite Corporation, 62 S.Ct. 1070, 316 U.S. 265 (1942) rehearing denied 62 S.Ct.
1302, 316 U.S. 713.

---

[12] rehearing denied 81 S.Ct. 899, 365 U.S. 875.  *See Also* Bethlehem Plaza v. Campbell which
stands for the position that the sweeping statutory language of sections 1 to 7 of the Sherman Antitrust
Act are not without some limitation;  the Supreme Court has recognized a necessary limitation in order to
resolve the conflict between the legislative intent to foster competition and the fundamental precepts
embodied in U.S.C.A. Const. Amend. 1 which protect legitimate attempt to influence the operation of the
executive and legislative protests. 403 F.Supp. 966 (E.D.Pa.1975).

[13]  affirmed 425 F.2d 932, certiorari denied 91 S.Ct. 62, 400 U.S. 831, 27 L.Ed.2d 62.

## VI    THE ALLEGED RESTRAINT ON TRADE AT ISSUE IN PLAINTIFF'S COMPLAINT IS NOT UNREASONABLE

It is unclear from a reading of Plaintiff's complaint as to whether Plaintiff alleges that the Defendants' conduct constitutes a "per se" violation of the antitrust act. However, as indicated above, Defendants reject the Plaintiff's contention that Defendants engaged in price fixing and reject the notion that Defendants attempted to form a monopolistic organization in restraint of trade. Other than these two aspects, alleged price fixing and alleged establishment of monopoly, Plaintiff has not plead any other facts which could conceivably amount to a per se violation. Thus, as to the remainder of Count I, the Defendants' alleged conduct are to be analyzed by the court under the "rule of reason" standard.[14]  State Oil Co. v. Khan, 522 U.S. 3, 118 S.Ct. 275 (1997). Under this standard, the finder of fact must decide whether the questioned practice imposes an **unreasonable** restraint on competition.[Emphasis Added] Id.

### A.    Defendants Are Entitled to Rule of Reason Analysis

Despite the all encompassing language of the statutes in question, restrictions imposed by the antitrust statutes do not prevent the adoption of ***reasonable means*** to protect interstate commerce from destructive or injurious practices and to promote competition on a sound basis. [Emphasis Added]. Sugar Institute v. United States, 297 U.S. 533, 56 S.Ct. 629 (1936); See, U.S. v. Brown University in Providence in State of Rhode Island, 5 F.3d 658 (3d Cir. 1993) [Because even beneficial business contracts or combinations restrain trade to some degree, section of Sherman Act declaring restraint

---

[14]Plaintiff shoulders the burden of proving unreasonableness of restraint unless the challenged activity is per se violation of this section. Lektro-Vend Corp. v. Vendo Co., 660 F.2d 255 (7th Cir. 1981) *cert denied*, 455 U.S. 921, 102 S.Ct. 1277.

on trade or commerce illegal is interpreted **to prohibit only those contracts or combinations that are "unreasonably restrictive" of competitive conditions**] [Emphasis Added]; *Accord*, Response of Carolina, Inc. v. Leasco Response, Inc., 537 F.2d 1307 (11th Cir. 1976) [The standard of reasonableness has been adopted to judge the lawfulness of the restraint.]

The Court, in applying the rule of reason standard, takes into consideration a number of factors including specific information about relevant business, its condition before and after restraint was imposed and the restraint's history, nature, and effect. State Oil Co. v. Khan, 522 U.S. 3, 118 S.Ct. 275 (1997).

In applying the standard, the stated purpose of the antitrust legislation is instructive. The stated purpose of antitrust legislation is to "preserve a system of free competition, which means that no unreasonable or undue restraints are to be imposed on the competitive economic system so as to hinder or retard the free interplay of vital competition in the market place.  Hiland Dairy Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968) *Cert. Den.* 395 U.S. 961, 89 S.Ct. 2096.

Whether or not the restraint at issue is reasonable for purposes of determining a violation may be gleamed from the circumstances of the case and the particular contract involved. Scapa Dryers, Inc. v. Abney Mills, 269 F.2d 6 (5th Cir. 1959), *cert. denied*, 361 U.S. 901, 80 S.Ct. 209. In holding a restraint to be unreasonable, the court must find that the restraint had an "anticompetitive effect." Richter Concrete Corp. v. Hilltop Concrete Corp, 691 F.2d 818 (6th Cir. 1982). Such an anticompetitive effect is found where the restraint adversely affects price, quantity, quality, or choice of good or

services available to consumers. <u>Lifeline Ltd. No. II v. Connecticut General Life Ins. Co.</u>, 821 F.Supp. 1201 (E.D. MI 1993).[15]

Since the enactment of the antitrust laws in question, the courts have been granted discretion to determine in a given case whether the particular action comes within the court's condemnation. <u>Standard Oil Co. of New Jersey v. U.S.</u>, 221 U.S. 1, 31 S.Ct. 502 (1911). In interpreting antitrust law, the courts are charged with the responsibility of determining the economic reality of the relevant transaction. <u>U.S. v. Concentrated Phosphate Export Ass'n</u>, 393 U.S. 199, 89 S.Ct. 361 (1968).

### B.   Dismissal is Appropriate Where, As a Matter of Law, the Plaintiff's Theory Does Not Make Economic Sense

The court may declare the purported restraint to be not unreasonable as a matter of law, and dismiss the claim without submitting the matter to a jury upon an finding that the alleged violation, "does not make economic sense." <u>SCFC ILC, Inc. v. Visa U.S.A., Inc.</u>, 819 F.Supp 956 (Dist. Utah 1993).[16]

Here, in applying the rule of reason standard, to the facts and circumstances in this case, the alleged restraint is unreasonable. The system of using a rate sheet as a guideline had been in place prior to the Defendants questioning its terms. Denying the Defendants the right to challenge the method by which the brokers establish their wages and how the jobs are priced does not make good economic sense.

As indicated, nowhere in Plaintiff's Compliant is it alleged that the purported

---

[15]*Modified on other grounds,* 821 F.Supp.1213.

[16]*Affirmed in part, reversed in part on other grounds*, 36 F.3d 958, *cert denied*, 515 U.S. 1152, 115 S.Ct. 2600.

*16*

restraint had any economic effect on the price of hauling material. Such a flaw is fatal under both the Ricther and Lifeline cases.

It is immaterial to the court's analysis how TUPLER may have suffered as a result of the temporary change in work loads. *See*, Franchon & Maaarco v. Paramount Pictures, 100 F.Supp 84 (D.D. Cal. 1951).[17] The relevant inquiry is how the overall market was harmed. To the extent Plaintiff's complaint is void of such an allegation, no cause of action can lie.

## VII    DEFENDANTS' ORGANIZATION DOES NOT CONSTITUTE A MONOPOLY

Section 2 of the statute prohibits combinations or conspiracies to monopolize, or to attempt to monopolize in restraint of interstate trade and commerce. In order to establish such burden, Plaintiff must prove something more than parallel behavior, and it is not enough to prove that the alleged co-conspirators have merely exchanged information, liability must stem from proof of either unlawful purpose or anticompetitive effect. Alabama Sportservice, Inc. v. National Horsemen's Benev. & Protective Ass'n, Inc., 767 F.Supp. 1573 (M.D. Fla. 1991).

In addition, the conspiracy must be designed to achieve an unlawful objective. U.S.Anchor Mfg., Inc. v. Rule Industries, Inc., 7 F.3d 986 (11th Cir. 1993).[18]

Moreover, in order to violate the relevant statutes, the conspiracies must be an **unreasonable** restraint on trade. Jackson v. Radcliffe, 795 F.Supp. 197 (S.D.Tex 1992). Here, as indicated in the attached affidavits, the stated purpose of the

---

[17] *Affirmed*, 215 F.2d 167, *cert denied*, 345 U.S. 964, 73 S.Ct. 950.

[18] *Certified question answered* 443 S.E. 2d 833, 254 Ga. 295, *answered to cert question conformed* to 27 F.3d 521, *cert denied*, 512 U.S. 1221, 114 S.Ct. 2710.

*17*

organization was for legal representation, and for no improper purpose. As discussed below, the Plaintiff has not alleged any anticompetitive effect on the market place, presumably because no anticompetitive effect exits.

## VIII   PLAINTIFF'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER THE FLORIDA ANTI TRUST ACT.

Count II of Plaintiff's Complaint alleges a violation of the Florida Anti Trust Act. The language of the state act is nearly identical to the relevant portions of the Sherman Antitrust Act. Furthermore, Florida's act expressly states, "It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relation to comparable federal antitrust statutes." Florida Statute 542.32 (1995). Therefore, Defendants contend that for the reasons stated above, since Plaintiff's Sherman and Clayton's Act are untenable based on relevant, applicable federal law, so too, is Plaintiff's Florida antitrust action when the same federal law is applied. Thus, to the extent that Plaintiff has failed to state a cause of action under the Sherman Antitrust and Clayton Acts, it has similarly failed to state a basis upon which relief may be granted under the Florida Antitrust Act.

## IX   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AS MOOT

The Plaintiff's Complaint should be dismissed as Moot since the truckers are accepting future work assignments and there is no continuing harm to Defendants.

Plaintiff's Complaint alleges that Defendants have stopped working and refused to honor contractual commitments to brokers, that the Defendants have organized pickets and protests at the entrance to quarry roads (presumable Palm Beach Aggregates), posted signs and protests warning truckers to continue to work.

(Complaint P 11(a)-(e)).

In Count I of Plaintiff's Complaint, TUPLER further alleges that "[T]here is a dangerous probability that the Defendants will succeed in establishing a monopoly if they are allowed to continue their activities. TUPLER had suffered and continues to suffer irreparable harm as a result of the Defendants' illegal conduct ." (Complaint P 30-31, P-40). Obviously, since the fifteen day work stoppage has ended, there is no "dangerous probability" that the Defendants will establish a monopoly. Similarly, there can be no "irreparable harm" to the Plaintiff since the Defendants' conduct, has ceased.

Furthermore, as indicated in the attached affidavits, the Association was established for the purposes of legal representation, and not to set up a competitor corporation or other competing entity. (See Affidavit of Carlos Marcelo, Paragraph 18; Affidavit of Jose Matos, Paragraph 27; Affidavit of Daniel Balazi). Once the members of the " to-be-formed-association" received information that several lawsuits had been filed against them, the efforts to finalize the formation of the non-profit organization have been discontinued. (Affidavit of Jose Matos, Paragraph 30).

## X.   THIS MATTER IS APPROPRIATE FOR DISMISSAL

Whether the Defendants are within the prohibitions of this section is a "question of law." Gary Theatre Co. v. Columbia Pictures Corp., 120 F.2d 891 (7th Cir. 1941); *See*, Paramount Pictures v. United Motion Picture Theatre Owners of Eastern Pennsylvania, 93 F.2d 714 (3d Cir 1937) [In determining whether a combination or conspiracy violates the antitrust laws, question for courts in not economic, but purely legal, and merely involves the determination of the true interpretation of the law].

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished

by Facsimile and U.S. mail to: **Edward Trent, Esq.,** Fisher & Phillips, LLP. 2300

Nationsbank Tower One Financial Plaza Fl. Lauderdale, Florida 33394-0005 (954/525-

8739). on this _20_ day of March, 2000.

> STROLLA & SCOTT, P.A.
> The Guaranty Building
> 120 South Olive Avenue Suite303
> West Palm Beach, FL 33401
> Phone: (561) 802-3132
> Fax: (561) 802-3121
>
> CATHLEEN SCOTT, ESQUIRE
> Florida Bar No.: 135331