IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)



AUSTIN TUPLER, INC. et al.,
                Plaintiffs,
vs.

SUPPORT TRUCKING GROUP, et al,
                Defendants.
_____/

**CASE NO.: 00-6223 CIV Gold**
Magistrate Judge Simonton

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS, OR IN THE ALTERNATIVE
MOTION FOR SUMMARY JUDGMENT**

Defendants by and through their undersigned counsel file this Reply in response to Plaintiff's Opposition and in support of Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

**I.    Plaintiff TUPLER Has No Standing To Bring An Antitrust Violation**

In Plaintiff's Opposition they contend that, "[c]learly, Plaintiff's have standing." (Opposition Page 6). Remarkably absent from the Plaintiff's Opposition is any response to the Defendants' argument that Plaintiff's attempt to state a cause of action for an antitrust violation is fatally flawed where the Plaintiff has failed to allege the two requisites for standing, harm to competition and that Plaintiff is the most efficient enforcer of the antitrust laws.

Plaintiff continues to argue that because TUPLER, one of several brokerage companies, suffered an alleged harm, linked to the brief work stoppage, that there is an automatic antitrust violation. This broad and overreaching interpretation of antitrust law

is not consistent with precedent.

The Court has expressly limited the reach of antitrust statutes by finding, "[i]t is reasonable to assume that Congress did not intend to allow every person *tangentially affected* by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." [Emphasis Added] <u>Associated General Contractors of California v. California State Council of Carpenters</u>, 459 U.S. 519, 534; 103 S.Ct. 897, 907 (1983).[1]

What the Plaintiff fails to appreciate is that antitrust laws are not interested in the individual company, but rather antitrust laws were designed to protect *competition*, not *competitors*, and courts must analyze the question of antitrust injury *from the viewpoint of the consumer of the product or services at issue*." [Emphasis Added]. <u>Assoc. General Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 103 S.Ct. 897 (1983).[2]

As set forth more fully in Defendants' Motion for Summary Judgment, one way the Court has limited the reach of the statute is by requiring Plaintiff to demonstrate that Defendants' activities *stifled competition*.[Emphasis Added] <u>Midwestern Waffles, Inc. v. Waffle House, Inc.</u>, 734 F.2d 705 (11th Cir. 1984). "An antitrust Plaintiff *must prove that challenged conduct affected the prices, quantity or quality of goods and services, not just his own welfare*." [Emphasis Added] <u>Baglio v. Baska</u>, 940 F.Supp. 819, 827 (W.D. Pa. 1996).[3]

---

[1] <u>Citing</u>: <u>Blue Shield of Virginia, Inc. v. McCready</u>, ___ U.S.___, ___; 102 S.Ct. 2240, 2247 (1982).

[2] <u>Citing</u>: <u>Alberta Gas Chemicals, Ltd. v. E.I. Dupont De Nemours</u>, 826 F.2d 1235, 1241 (3d Cir. 1987). Cert. Denied, 486 U.S. 1059, 108 S.Ct. 2830 (1988).

[3] *affirmed* 116 F.3d 467 (3d Cir. 1997) <u>citing</u>: <u>Matthews v. Lancaster</u> (Citations Omitted).

The Plaintiff has not alleged a single fact which rises to the level of stifling competition. Plaintiff does not even allege a true restraint on trade. Moreover, since the truckers were under no contractual obligation to perform work for TUPLER, their refusal to accept new work at unacceptable pay rates cannot be said to cause an injury to the entire truck hauling industry. TUPLER's burden is made more cumbersome to the extent a number of other drivers remained at work and the quarry remained open for twenty-four hours.

Plaintiff has not presented this court with a single contract obligating the Defendants' to perform during the temporary stoppage. Thus, this fact is undisputed. Plaintiff seems to suggest that Defendants do not have the right to decide for themselves what rate of pay they will accept for their services. Plaintiff argues a tenuous position, they argue that Defendants are independent contractors, but that they do not have the right to refuse to enter future contracts and demand more for their time. The freedom to contract at desirable rates is crucial at a time when the price for fuel is soaring.

In addition, Plaintiff ignores that there must be an overwhelming effect on the entire trade, on the entire competitive process. Instead Plaintiff argues that the Defendants' conduct constitutes a per se violation. Regardless of the *type* of violation, the Plaintiff must still be able to establish standing and to demonstrate the requirement of stifling competition.

Plaintiff, by ignoring the threshold issue of standing, seems to overlook the importance of this fundamental issues. In so doing, Plaintiff ignores the rational of the Supreme Court.

**II    No Price Fixing Violation Where Industry Guidelines Are Utilized**

It also remains undisputed fact that the Defendants merely sought to supplement the existing rate sheet so that considerations for the rising cost of fuel, insurance and vehicle maintenance could be accounted for by brokers such as TUPLER when bidding future jobs. As set for more fully in Defendants' Motion, the District Court in New York found that the broad guidelines which are commonly used in an industry **do not constitute price fixing and do not affect competition**. Jacobi v. Bache & Co., Inc., 377 F.Supp. 86 (S.D.N.Y.1974).[4]

Plaintiff's Opposition does not address this issue. Instead, Plaintiff's response focuses on Plaintiff's claimed ability to establish monetary damages.

**III    The Damages Alleged in Plaintiff's Complaint Are Speculative And Too Remote To Establish Price Fixing**

Private antitrust liability requires a showing of a violation of the antitrust laws, fact of damage, and some indication of the **amount of damage**. Sherman Anti-Trust Act, § 1 et seq., §15 U.S.C.A. 1 et seq.; Clayton Act, §§ 1 et seq., 4, §§15 U.S.C.A. 12 et seq., 15.; Nichols v. Mobile Bd. of Realtors, Inc., 675 F.2d 671 (11th Cir. 1982).

Plaintiff's Complaint is utterly void of any allegation of their damages, except to recite boiler-plate language of their alleged irreparable harm. Plaintiff has now argued in its Opposition that the damages can be calculated but have failed to amend their complaint or specify any amount of damage. Where there exist such an omission, the Complaint should be dismissed.

---

[4] *affirmed* 520 F.2d 1231, cert. den. 96 S.Ct. 784, 423 U.S. 1053.

IV       **Where No Agreement Exists, There Can Be No Anti-Trust Violation**

Here, Plaintiff has attempted to allege that the truckers' eleven (11) day decision to accept no future assignments from the brokers constitutes an agreement to restrain trade. Plaintiff contends that the Defendants' request for a new method of bidding jobs, which included an increase in the per ton or per mile structure, created an "agreement," that argument is misplaced. As set forth more clearly in the affidavits of Jose Matos, Daniel Balazi, Eddie Perex, and Carlos Marcelo, the truckers never requested that the brokers set a price certain for all jobs. To the contrary, the truckers requested that the brokers adopt a new, updated *guideline* which would allow for the consideration of increased fuel prices and the rising cost of living when bidding jobs. As indicated, industry guidelines are permissible and immune from price fixing liability.

V.       **Plaintiff's Argument Is So Broad and All Encompassing It has The Effect Of Stifling The Defendants' Right to Assembly**

The Plaintiff challenge the Defendants' act of attempting to establish an association. This act has been characterized as a monopoly by the Plaintiff.

Here, according the Affidavits of Jose Matos, Daniel Balazi, Eddie Perex, and Carlos Marcelo, the purpose of the organization formed by the individual Defendants was for the purpose of legal representation and advise as to the problems encountered with dealing with the Brokers. The Defendants should be entitled to the form such organizations for this stated purpose without the fear of being accused of price fixing.

VI.      **There Is No Evidence Of Defendants' Motive To Price Fix**

It is only a concerted refusal to deal, with motive of fixing prices, that makes out a

per se antitrust violation. <u>Tripoli Co. v. Wella Corp.</u>,286 F.Supp. 264 (E.D.Pa.1968).[5]

Parties to an illegal price fixing combination must be held to have intended the necessary and direct consequences of their acts, and they would not be heard to say that they did not intend to join the combination or to fix prices. <u>United States v. Masonite Corporation</u>, 62 S.Ct. 1070, 316 U.S. 265 (1942) rehearing denied 62 S.Ct. 1302, 316 U.S. 713.

Here, the only element of motive present in Plaintiff's Pleadings is the allegation that Defendants refused to accept new work orders. The freedom to enter into a contract with the Plaintiff is an essential element in a free economy. Plaintiff's argument that the refusal to enter into contract is somehow an antitrust violation is a dangerous slope. Assuming the Defendants had decided to cease their trade as an independent driver and become employed in an entirely new area, this decision would have the same alleged affect on TUPLER, namely, the Defendants refusal to continue to contract, but under Plaintiff's broad analysis, even this decision would constitute a violation.

In a second scenario, assume the truckers remained organized and assume they created their own company which would directly compete with the Plaintiff, conceivably, no antitrust violation would be brought since this would only aid competition in the market. However, the Plaintiff ask this court to infer that organizing to discuss their legal rights and options, is a antitrust violation. The Plaintiff ask this court to find that organizing to discuss potential scenarios is an illegal act, when the end result of those

---

[5] affirmed 425 F.2d 932, certiorari denied 91 S.Ct. 62, 400 U.S. 831, 27 L.Ed.2d 62.

discussion is legal permissible. Such a legal inconsistency cannot exist.

## VII   The Court Has Discretion To Determine Whether The Subject Matter Is An Appropriate For Antitrust Considerations

This Court has discretion to determine, in a given case, whether the particular actions come within the court's condemnation. Standard Oil Co. of New Jersey v. U.S., 221 U.S. 1, 31 S.Ct. 502 (1911). In interpreting antitrust law, the courts are charged with the responsibility of determining the economic reality of the relevant transaction. U.S. v. Concentrated Phoshate Export Ass'n, 393 U.S. 199, 89 S.Ct. 361 (1968).

Here, the Court is charged with determining whether the alleged conduct of the Defendants rises to the level of a restraint on trade, and if so whether the restraint is unreasonable. The stated purpose of the antitrust legislation is to "preserve a system of free competition, which means that no unreasonable or undue restraints are to be imposed on the competitive economic system so as to hinder or retard the free interplay of vital competition in the market place. Hiland Dairy Inc. v. Kroger Co., 402 F.2d 968 (8th Cir. 1968) *Cert. Den.* 395 U.S. 961, 89 S.Ct.2096.

Allowing independent contractors the freedom to enter or to refuse to enter contracts with brokers is part of a competitive market place.

## VIII   Defendants Are Able To Meet Their Burden

A Motion for Summary Judgment should be granted where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof

concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Fed.R.Civ.P. 56(c).

Once this initial demonstration under Rule 56(c) is made, the burden of production shifts to the non-moving party. At that time, Plaintiff, TUPLER must designate, "specific facts showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324; Fed.R.Civ. 56(c). In so doing, TUPLER, "must do more that simply show that there is a metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). TUPLER must demonstrate that there is a "genuine issue for trial." <u>Matsusshita</u>, 475 U.S. at 587. An action is void of a material fact where, "the record taken on the whole, could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita</u>, 475 U.S. at 587.

Here, Defendants have established that the Plaintiff cannot meet the threshold requirements of standing. Moreover, Plaintiff is unable to establish the essential elements of an antitrust violation. Namely, there is no agreement and there is no "unreasonable" restraint on trade. The only alleged "price fixing" is the utilization of a broad guideline which has been found by the courts to be immune from price fixing liabilities. In addition, the Court has the authority to determine whether the defendants' conduct constitutes an *unreasonable* restraint on trade.

Allowing Plaintiff's case to move forward has the effect of disallowing Defendants to exercise their right to chose the rate of pay they will work at. Furthermore, allowing this case to proceeds as the effect of stifling Defendants' constitutional right to assemble for the purpose of legal representation.

///

**VIII   Conclusion**

Instead of addressing the central issues raised in Defendants' complaint, Plaintiff ignores the threshold requirements of standing and the requirement that Defendants' conduct constitute an unreasonable restraint on trade. In so doing, the Plaintiff opens pandora's box on anti-trust violations. Defendants respectfully request that the court find that where Plaintiff is unable to establish the threshold requirements of an antitrust violation that the Defendants are entitled to judgment as a matter of law in their favor.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail to: **Edward Trent, Esq.,** Fisher & Phillips, LLP. 2300 Nationsbank Tower One Financial Plaza Fl. Lauderdale, Florida 33394-0005, Richard Diaz, Esquire, 2701 Southwest 3rd Avenue, Miami, Fl 33127-2335, Hosey Hernandez, Esquire, Coconut Grove Bank Building, 2701 South Bayshore Drive, Suite 602, Coconut Grove, FL 33133, Angel Ruiz, Esquire, Gomez, Del Pino & Ruiz, P.A., 1835 West Flagler Street, Miami, FL 33135, and Terry Schwartz, Esquire, Sonneborn Rutter Cooney, et al., 1545 Centrepark Drive North, West Palm Beach, FL 33401 on this 17th day of April, 2000.

STROLLA & SCOTT, P.A.
The Comeau Building
319 Clematis Street Suite 801
West Palm Beach, Florida 33401
Telephone 561-802-3132
Facsimile 561-802-3121

_____
CATHLEEN SCOTT, ESQUIRE
Florida Bar No.: 135331