

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 00-6223-CIV-GOLD/Simonton

AUSTIN TUPLER TRUCKING, INC., JUNER
HAULING CORPORATION, RETRANCA
EQUIPMENT & TRUCKING CORP.,TRUCK
BROKERAGE BY NATIONAL, INC., and
EASTMAN AGGREGATES

        Plaintiffs,

vs.

SUPPORT DUMP TRUCKING GROUP, INC.,
JUAN ARAGONES, OSCAR DE LEON,
REYNALDO RODRIGUEZ, RAFAEL D.
JIMENEZ, NORVEL IGARZA, ALAYN
HERNANDEZ, EDUARDO RODRIGUEZ,
OSMELY JIMENEZ, OSCAR SUAREZ,
JULIO GOMEZ, RIGODERTO PUPO,
RENIER MARTINEZ, GIRALDO VICTORIA,
VICTOR MORALES, JOHN DOE 1 through 300,
OWNERS ASSOCIATION OF PALM BEACH
AND BROWARD COUNTY, CHARLES LUQUE,
JORGE VALIENTE, JOSE MATOS, ISAAC
TURGEMAN, ILCEANE SFORCA, OSSIE
FERNANDEZ, and DANIEL BALAZI

        Defendants.
_____/

**PLAINTIFFS' AUSTIN TUPLER TRUCKING, INC., ET. AL.'S REPLY MEMORANDUM TO DEFENDANTS OWNERS ASSOCIATION OF PALM BEACH AND BROWARD COUNTY, ET. AL.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Rule 7.1(C), S. D. Fla. L. R., Plaintiffs Austin Tupler Trucking Inc., et. al. ("Plaintiffs") file this Reply Memorandum to Defendants Owners Association of Palm Beach and Broward County, Oscar Suarez, Victor Morales, Jose Matos, Ilcean Sforca, Jorge Valiente, Daniel



Balazi, and Ossie Fernandez's ("Palm Beach Defendants") Opposition to Plaintiff's Motion for Preliminary Injunction. Because Plaintiffs are able to demonstrate a substantial likelihood of success on the merits that Defendants violated federal and state antitrust laws by engaging in illegal price fixing and group boycotts, both *per se* violations of the statutes, Plaintiffs are entitled to injunctive relief. "Where, as here, the statute was enacted to protect the public interest and itself authorizes injunctive relief, 'the passage of the statute is in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained.'" *United States v. Medina*, 718 F. Supp. 928, 930 (S.D. Fla. 1989) (quoting, *United States v. Diapulse Corp.*, 457 F.2d 25, 28 (2nd Cir. 1972)).

A. **Injunctive Relief Is Appropriate Upon a Showing of a Statutory Violation and Reasonable Likelihood of Future Violations**

The Palm Beach Defendants seem to concede that Plaintiffs are entitled to injunctive relief if they are able to show a violation of the statute and that there is "some reasonable likelihood of future violations." *Commodity Futures Trading Comm. v. Nelson Bunker Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979); *United States v. Richlyn Laboratories, Inc.*, 827 F. Supp. 1145, 1150 (E.D. Pa. 1992); *see generally*, Defendants' Opposition, p. 8-10. While the Palm Beach Defendants continue to argue that Plaintiffs are unable to prove a violation of the statute, the undisputed facts of this case clearly prove that the Palm Beach Defendants, all independent business owners working as independent contractors, engaged in a massive, joint work stoppage for the purpose of forcing Plaintiffs to pay higher hauling rates to the Palm Beach Defendants. The Palm Beach Defendants congregated outside of Palm Beach Aggregates, a main supplier of materials for Plaintiffs, for the purpose of making "a statement to the brokerage companies that we would no longer work for such little payment . . .." Matos Aff. ¶ 21; Balazi Aff. ¶ 17; Marcelo Aff. ¶ 16; Perez Aff. ¶ 16 (Attached as

Exhibits to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment). As set forth more fully in Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Injunction and Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment, the Palm Beach Defendants' conduct constitutes a *per se* violation of the antitrust laws.[1] To be entitled to injunctive relief, Plaintiffs need only show a "threatened loss or damage by a violation of the antitrust laws." *Beef Indus. Antitrust Litigation v. A&P*, 600 F.2d 1148, 1167 (5th Cir. 1979)(quoting 15 U.S.C. § 26). Plaintiffs do not need to show the extent of the harm, but only that the Palm Beach Defendants' illegal actions have or will have an effect on Plaintiffs. *Id.* This has clearly been shown. The only question, therefore, as it relates to the Palm Beach Defendants, is whether there is a reasonable likelihood of future violations.[2]

While the Palm Beach Defendants have returned to work ***after they got agreements from Plaintiffs and other brokers for higher hauling rates and after this lawsuit was filed,*** and have worked apparently without incident since, their past conduct indicates at least a "reasonable likelihood of future violations:"

---

[1] Price fixing is a *per se* violation of the antitrust laws. *United States v. Nat'l Assoc. of Real Estate Boards*, 339 U.S. 485, 489, 70 S. Ct. 711, 714, 94 L. Ed. 1007 (1950). Additionally, group boycotts are *per se* violations of the antitrust laws. *Unites States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1365 (5th Cir. 1980)(citing *U.S. v. General Motors Corp.*, 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966)).

[2] As addressed below, the Palm Beach Defendants' contention that Plaintiffs must show irreparable harm, or the lack of an adequate remedy at law, and that the balance of equities must favor an injunction are not applicable in a *per se* violation case such as this. The violation of the statute is enough to warrant an injunction and the existence of a *per se* violation inherently has the equities balanced in favor of enjoining its continuation or repetition.

> While past misconduct does not lead necessarily to the conclusion that there is a likelihood of future misconduct, it is "highly suggestive of the likelihood of future violations." *SEC v. Management Dynamics, Inc.*, 515 F. 2d 801, at 807 (2nd Cir. 1975). *See also, Commodity Futures Trading Comm. v. British American Commodity Options Corp.*, 560 F.2d 135, at 142 (2nd Cir. 1977); *SEC v. Advance Growth Capital Corp., supra*, at 53. In drawing the inference from past violations that future violations may occur, the court should look at the "totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant." *SEC v. Management Dynamics, Inc., supra*, at 807; *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8 (2nd Cir. 1977).

*Commodity Futures Trading Comm.*, 591 F.2d at 1220. The Palm Beach Defendants' past conduct and their admission that they organized the mass work stoppage and group boycott for the purpose of "making a statement" to Plaintiffs that they must pay higher rates are clear indications that absent injunctive relief there is a "reasonable likelihood" that the Palm Beach Defendants will violate the antitrust laws in the future. *See, e.g., City Link*, March 22-28, 2000, attached as Exhibit A to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment.

Courts have looked to a variety of factors in determining the reasonable likelihood of future violations. "The fact that a violator has continued to maintain that his conduct was blameless has prompted several courts to look favorably on injunctive relief." *Commodity Futures Trading Comm.*, 591 F.2d at 1220. As set forth in the Palm Beach Defendants' Opposition and in their Motion to Dismiss or in the Alternative Motion for Summary Judgment, these Defendants, while admitting the key facts, still deny that their undisputed conduct is in violation of the antitrust laws. There is absolutely no difference between the Palm Beach Defendants' conduct and the conduct found to be illegal in *Federal Trade Commission v. Superior Court Trial Lawyers Assoc*, 493 U.S. 411, 110 S.Ct. 768, 107 L. Ed. 2d 851 (1990); *United States Steel Corp. v. Fraternal Association*

*of Steelhaulers,* 431 F.2d 1046 (3rd Cir. 1970); and *Local 36 of Int'l Fishermen & Allied Workers of America v. United States,* 177 F.2d 320 (9th Cir. 1949). Defendants admit in their affidavits attached to their Motion to Dismiss or in the Alternative Motion for Summary Judgment that they agreed among themselves and formed an association for the purpose of forcing Plaintiffs to raise the rates they pay for dump trucking services. This conduct constitutes illegal price fixing. *Superior Court Trial Lawyers,* 493 U.S. at 424.[1] The Palm Beach Defendants' denial of the illegality of their actions clearly indicates a reasonable likelihood of future violations.

"Similarly, when a defendant persists in its illegal activities 'right up to the day of the hearing in the district court . . . the likelihood of future[] violations, if not restrained, is clear.'" *Commodity Futures Trading Comm.,* 591 F.2d at 1220 (quoting *Commodity Futures Trading Comm. v. British American Commodity Options Corp.,* 560 F.2d 135, 142 (2nd Cir. 1977)). While the Palm Beach Defendants returned to work prior to the filing of Plaintiffs' Motion for Preliminary Injunction, they did not return to work until after Plaintiffs filed and served their suit seeking both monetary damages and injunctive relief. The Palm Beach Defendants' apparent fear of litigation does not suggest that the Palm Beach Defendants will refrain from future violations.

The Palm Beach Defendants have followed the lead of Defendant Support Dump Trucking Group, Inc. and its members in Dade County in their work stoppage and boycotts. Defendant Support Dump Trucking Group, Inc. is continuing to violate the antitrust laws by stopping jobs until

---

[1] Even the Palm Beach Defendants' mistaken belief that Plaintiffs operate on a fixed rate sheet does not change the fact that their actions constitute illegal price fixing and their methods constitute an illegal group boycott.

increased prices are paid on those jobs. There is nothing to suggest that the Palm Beach Defendants will not engage in this illegal activity also.

Defendants' planned action also suggests a reasonable likelihood of future violations:

> [C]ourts have analyzed the nature of the past misconduct and the violator's occupation or customary business activities to determine whether an injunction should be granted. When the violation has been founded on systematic wrongdoing, rather than an isolated occurrence, a court should be more willing to enjoin future misconduct. And when a defendant, because of his professional occupation or career interest, will be in a position in which future violations could be possible, relief is appropriate.

*Id.* (citations omitted). Here, the Palm Beach Defendants planned their illegal work stoppage and group boycott prior to it taking place. They chose a specific location for their boycott, a location to have the greatest impact on Plaintiffs' businesses. *See, e.g.*, Matos Aff. ¶ __. The Palm Beach Defendants formed an association to represent their collective interests in demanding price increases. *See, e.g.*, Letter from Cathleen Scott, Esq. to Eastman Aggregates, attached as Exhibit 22(B) to Plaintiff's Motion for Preliminary Injunction. The goal of the Palm Beach Defendants' past misconduct was to affect hauling rates. The Palm Beach Defendants simply contacted other independent owner-operators and encouraged them to join the work stoppage and group boycott, conduct that could easily and reasonably repeat itself absent an injunction from this Court. The Palm Beach Defendants' actions were not isolated, but rather constituted a planned and "systematic wrongdoing" that justifies the entry of an injunction at this stage of the litigation.

Finally, the Palm Beach Defendants have never made any assurances that their illegal conduct will not occur in the future. Indeed, they do not even recognize the illegal nature of their conduct, so there is no incentive for them not to repeat their transgressions of this past February. Accordingly, the only way to preserve the status quo and ensure that further violations of the

antitrust laws do not occur is by the issuance of a preliminary injunction. Preservation of the status quo is a legitimate reason for issuing a preliminary injunction. *See Dos Santos v. v. Columbus-Cuneo-Cabrini Medical Center*, 684 F.2d 1346, 1350-1351 (7th Cir. 1982).

B. **Other Traditional Elements of a Claim for Preliminary Injunction Need Not Be Independently Established**

The Palm Beach Defendants argue that the Court should balance the equities before determining whether to issue a preliminary injunction in this case and rely on *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356 (2nd Cir. 1976) for this proposition. There, the Second Circuit Court of Appeals balanced the equities of the parties because there was a "serious question going to the merits to make them fair ground for litigation." *Id.* at 1358. The court noted that if there was a substantial likelihood of success on the merits, the plaintiff need only show "possible irreparable injury." *Id.* Of course, a *per se* violation of the antitrust laws is presumptively an irreparable injury. *Richlyn Laboratories*, 827 F. Supp. at 1150.

Plaintiffs here have demonstrated a substantial likelihood of success on the merits. Given the *per se* violations involved, however, the equities favor enjoining any future conduct of that nature. *See, E.S. Development, Inc. v. RWM Enterprises, Inc.*, 939 F.2d 547, 557 (8th Cir. 1991)(after finding that the defendants were guilty of a *per se* violation of the antitrust laws, the court noted, "Upon finding an antitrust defendant guilty of a violation of the Sherman Act, a district court is 'empowered to fashion appropriate restraints on [the defendant's] future activities both to avoid a recurrence of the violation and to eliminate its consequences") (quoting *Nat'l Soc. of Professional Engineers v. United States*, 435 U.S. 679, 697, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978)). The Sherman

Act has already balanced the interests of the parties and the public against price fixing. *Superior Court Trial Lawyers*, 493 U.S. at 424.

The Palm Beach Defendants cite a number of other cases suggesting either a need for Plaintiffs to prove irreparable injury or some other greater burden before the Court should enter a preliminary injunction in this case. The Palm Beach Defendants' reliance on these cases is misplaced.

Initially, none of the cases cited by the Palm Beach Defendants concern *per se* violations of the antitrust laws. All of the cases use a rule of reason analysis not applicable when analyzing *per se* violations. *Abadir & Co. v. First Mississippi Corp.*, 651 F.2d 422, 425-426 (5th Cir. 1981). For example, the Palm Beach Defendants rely on *SCFC ILC, Inc. v. Visa U.S.A., Inc.*, 1992 WL 439733 (D. Utah 1992); *rev'd in part and aff'd in part*, 36 F.3d 958 (10th Cir. 1994), as support for their contention that the Court should somehow balance the equities of the parties. The district court there employed a rule of reason analysis on Sears' claims that Visa violated the antitrust laws. Following a jury trial, the district court found Visa to have violated the antitrust laws. On appeal, however, the Tenth Circuit Court of Appeals reversed and found that Sears had not proven a violation. 36 F.3d at 971. Accordingly, any analysis by the district court on the propriety of an injunction has no precedential value because there was no antitrust violation in that case.

The Palm Beach Defendants also rely on *Q-T Markets, Inc. v. Fleming Companies, Inc.*, 394 F. Supp. 1102 (D.C. Colo. 1975), as support for their argument that if there is an adequate remedy at law then Plaintiffs are not entitled to injunctive relief. In *Q-T Markets*, the court chose not to enter an injunction enjoining the defendants from collecting on outstanding debts that may have been incurred as a result of the antitrust violations not because there was an adequate remedy at law, but

because the antitrust laws did not provide for such relief. *Id.* at 1105. The court noted that the antitrust laws, in providing for injunctive relief, do not provide for the cancellation of debts as part of the relief granted a prevailing plaintiff. *Id.* The court also employed a rule of reason analysis not applicable here. Accordingly, *Q-T Markets* does not suggest that Plaintiffs are not entitled to a preliminary injunction.

The Palm Beach Defendants also rely on *Dos Santos, supra,* as support for their claim that if Plaintiffs can obtain money damages they are not entitled to injunctive relief. Again, the Palm Beach Defendants' reliance on this case is misplaced. *Dos Santos* concerned a termination from employment where the plaintiff claimed that her dismissal from a hospital was the result of an exclusive contract in violation of the antitrust laws.[2] The court, in reviewing the issuance of a preliminary injunction, applied a rule of reason analysis because there was no *per se* violation. 684 F. Supp. at 1352. In applying the rule of reason, the court noted that the plaintiff must show an adverse impact on competition in the relevant market, something Plaintiffs here need not do. *Id.*; *Local 36 of Int'l Fishermen & Allied Workers of America*, 177 F.2d at 331. The court also noted that the plaintiff's claimed injuries were not the result of the antitrust violation, but of her termination from employment. *Dos Santos*, 684 F. Supp. at 1350 and n.4. Accordingly, the court's analysis is not applicable to the facts of this case.

---

[2]The plaintiff worked for an association of anesthesiologists. The association had an exclusive agreement with the defendant to provide anesthesia services at the hospital. When the plaintiff was terminated from the association, the hospital would no longer allow her to perform anesthesia services at the hospital due to the exclusive agreement between the hospital and the association.

### C. The Legitimacy of the Defendants' Individual Conduct Is of No Consequence

The Palm Beach Defendants' conduct of engaging in a mass work stoppage and group boycott of Plaintiffs and other brokers until Plaintiffs agreed to pay higher haul rates constitutes a *per se* violation of the antitrust laws. *See Superior Court Trial Lawyers, supra.* Enjoining the Palm Beach Defendants from engaging in any mass work stoppages, group protests over the rates paid by Plaintiffs, group boycotts of Plaintiffs' suppliers, customers and contractors, represents "an appropriate restraint[] on [the Defendants'] future activities both to avoid a recurrence of the violation and to eliminate its consequences." *E.S. Development,* 939 F.2d at 557.

The Palm Beach Defendants claim that their First Amendment rights to assembly would be infringed upon if an injunction were to issue. However,

> it is well-settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violated a valid statute." *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 513-154, 30 L.Ed.2d 642, 92 S.Ct. 609 (1972); *see also National Soc. of Professional Engineers,* 435 U.S. at 697-98. Thus, while we agree that the resulting order may curtail appellants in the exercise of liberties that they might otherwise enjoy, we believe that is a "necessary and . . . unavoidable consequence of the[ir] violation" of the antitrust laws. *National Soc. of Professional Engineers,* 435 U.S. at 697.

*E.S. Development,* 939 F.2d at 558 (footnotes omitted). Even restrictions on seemingly legitimate conduct become appropriate when that conduct is in furtherance of a conspiracy to restrain trade. *Id.* at 555. "Thus, the otherwise legal nature of [the Palm Beach Defendants'] activities in furtherance of their conspiracy does not shield them from antitrust liability." *Id.* Accordingly, the Palm Beach Defendants' claim that they were simply speaking out on what they believe to be unjust prices or organizing for the purposes of legal representation does not negate Plaintiffs' entitlement to injunctive relief because such conduct was in furtherance of a conspiracy to fix prices.

D. **Conclusion**

In conclusion, and as started previously, "where the plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for injunctive relief, it need not show irreparable harm." *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 740 F.2d 566, 571 (7th Cir. 1984); *see also, Gresham v. Windrush Partners, LTD*, 730 F.2d 1417, 1423 (11th Cir. 1984); *South Central Bell Telephone Co. v. Louisiana Public Service Commission*, 744 F.2d 1107, 1120 (5th Cir. 1984). A mere showing of a violation of the statute is enough to support a preliminary injunction against further violations of the statute. *Gresham*, 730 F.2d at 1423; *United States v. Medina*, 718 F. Supp. 928, 930 (S.D. Fla. 1989). For the reasons set forth herein, and in Plaintiff's Motion for Preliminary Injunction and Memorandum in Support of Their Motion for Preliminary Injunction, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Injunction and enjoin all Defendants from any further activity in violation of the antitrust laws.

Respectfully submitted this 26th day of April, 2000.

By: _____
Charles S. Caulkins
(Fla. Bar No. 0461946)
James C. Polkinghorn
(Fla. Bar. No. 0376892)
Edward H. Trent
(Fla. Bar No. 0957186)
Attorneys for Plaintiffs.

FISHER & PHILLIPS LLP
NationsBank Tower
One Financial Plaza, Suite 2300
Fort Lauderdale, Florida 33394
Telephone: (954) 525-4800
Facsimile: (954) 525-8739

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of PLAINTIFFS AUSTIN TUPLER TRUCKING INC., ET. AL.'S REPLY MEMORANDUM TO DEFENDANTS OWNERS ASSOCIATION OF PALM BEACH AND BROWARD COUNTY, ET. AL.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION was served by First Class United States mail this 26th day of April, 2000, upon the following:

Richard Diaz, Esq.
Richard A. Diaz, P.A.
2701 Southwest 3rd Avenue
Miami, Florida 33127-2335
Attorneys for Support Dump
Trucking Group, Inc., Juan Aragones,
Oscar De Leon, Rafael D. Jimenez,
Alayn Hernandez, and Renier Martinez

Hosey Hernandez, Esq.
Hosey Hernandez, P.A.
Coconut Grove Bank Building
2701 South Bayshore Drive, Suite 602
Coconut Grove, Florida 33133
Attorneys for Support Dump Trucking Group, Inc.

Cathleen A. Scott, Esq.
Strolla & Scott, P.A.
The Comeau Building
319 Clematis Street, Suite 801
West Palm Beach, Florida 33401
Attorneys for the Owners Assoc. of
Palm Beach and Broward County,
Oscar Suarez, Victor Morales, Jose
Matos, Ilceane Sforca, Jorge Valiente,
Daniel Balazi and Ossie Fernandez

Raul Flores, Esq.
Law Offices of Manuel F. Fente, P.A.
1110 Brickell Avenue, Seventh Floor
Miami, Florida 33131
Attorneys for Julio Gomez

Terry R. Swartz, Esq.
Sonneborn Rutter Cooney
Klingensmith & Eyler, P.A.
1545 Centrepark Drive North
West Palm Beach, Florida 33401
Attorneys for Isaac Turgeman

Individual Defendants:

Reynaldo Rodriguez
2769 West 71st Place
Hialeah, Florida  33016

Norvel Igarza
2990 West 9th Avenue
Hialeah, Florida  33012

Eduardo Rodriguez
575 West 16th Street
Hialeah, Florida  33010

Osmely Jimenez
2624 Riverside Drive
Coral Springs, Florida  33065

Rigoderto Pupo
1555 West 44th Place #338
Hialeah, Florida  33012

Charles Luque
4701 Lyons Road, #212
Coconut Creek, Florida  33073

_____
Attorney