UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION



CASE NUMBER 00-6223-Civ-Gold/Simonton

FILED BY
00 SEP -1  AM 10: 07
CLARENCE HADDOX
CLERK U. S. DIST. CT.
S.D. OF FLA - MIA

AUSTIN TUPLER TRUCKING, INC.
et al.

      Plaintiff,

v.

SUPPORT TRUCKING GROUP,
et al.,

      Defendants.

_____/

**DEFENDANTS, JOHN DOE ASSOCIATION A/K/A THE COMMISSION,
N/K/A SUPPORT DUMP TRUCKINGGROUP, INC., JUAN ARAGONES,
OSCAR DE LEON,RAFAEL D. JIMENEZ, ALAYN HERNANDEZ, RENIER
MARTINEZ, AND JOHN DOES NUMBER 1 - 900'S, RESPONSE
AND INCORPORATED MEMORANDUM OF LAW TO PLAINTIFFS
AUSTIN TUPLER TRUCKING, INC., ET. AL.'S MOTION TO DISMISS AND
MEMORANDUM OF LAW IN SUPPORTOF MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIM**

      COME NOW, Defendants, John Doe Association, a/k/a The Commission

n/k/a Support Dump Trucking Group, Inc. ("SDTG"), Juan Aragones, Oscar de

Leon, Rafael D. Jimenez, Alayn Hernandez, Renier Martinez, ("Group 1

Defendants") and John Does Number 1-900[1] pursuant to Rule 7.1(C), S.D. Fla.

L.R. and file its Response and Incorporated Memorandum of Law to Plaintiff's

Motion to Dismiss and Memorandum of Law In Support Thereof.  As set forth

herein, Plaintiffs are not entitled to a dismissal of Defendants counterclaim under federal antitrust and state law claims because Plaintiffs are unable to show that Plaintiffs cannot prove any set of facts to support their allegations set forth in their Counterclaim.  Additionally, Plaintiffs are not entitled to summary judgment on any of the issues.

Defendants arguments are consolidated into the following topics:

(1)     The Defendants have established jurisdiction with this Court

(2)     The Defendants have met all standing requirements

(3)     The Defendants have not failed to state a claim upon which relied can be granted as to:

    a.  Fraud

    b.  Negligent misrepresentation

    c.  Theft

    d.  Civil theft

    e.  Conversion

    f.  Insurance fraud

    g.  Intentional Infliction of Emotional Distress

    h.  Negligent Infliction of Emotional Distress

    i.  Extortion

    j.  Racketeering

---

[1] We anticipate that once a full identification of the John Does is established, they will be formally named and served as parties to this action.

    k.  Federal and state antitrust laws

    l.  Florida's RICO Statute

As set forth more fully herein, Plaintiff's Motion to Dismiss should be denied.

## A.  <u>Standard for Motion to Dismiss</u>

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. <u>Arral Industries, Inc. v. Touch Entertainment, Inc.</u>, 2000 WL 141269 (S.D. Fla. 2000). Plaintiff's/Counter-Defendant's burden under Rule 12, Fed. R. Civ. P. to justify dismissal of Defendant/ Counter-Plaintiff's counterclaim is exceedingly high while the threshold of sufficiency that a complaint/counter-claim must meet to survive a motion to dismiss is "exceedingly low". <u>Ancata v. Prison Health Services, Inc.</u>, 769 F. 2d 700, 703 (11th Cir. 1985). The reviewing court must accept the Defendants/Counter-Plaintiffs' well pled facts as true and construe the complaint/counter-claim in the light most favorable to the non-moving party. <u>Howey v. Nisus, Inc.</u>, 910 F. Supp 567 (M.D. Fla. 1995). At a minimum, all that is required is a plain statement of the claim that "will give the plaintiff/counter-plaintiff fair notice of what the claim is and the grounds upon which it rests". <u>Conley</u>, 355 U.S. at 47. In deciding a motion to dismiss, the court must not look beyond the four corners of the complaint. <u>Milburn v. U.S.</u>, 734 F. 2d 762, 765 (11th Cir. 1984). Furthermore, the allegation in the complaint must be accepted as true and construed in the light most favorable to the Defendants/Counter-Plaintiffs. <u>Scheur v. Rhodes</u>, 416 U.S.

232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). "A motion to dismiss is only granted when the movant demonstrates beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief". Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

### B. Plaintiffs/Counter-Defendants Assert that Counterclaim Fails to Establish Jurisdiction by this Court

Plaintiff/Counter-Defendants basis for Defendants/Counter-Plaintiffs' lack of jurisdiction in this Court rests on their argument that Defendant's "… sole count based on federal law alleges violation of the Sherman and Clayton Antritrust Acts" and "that count is without merit…"  In order to state a cause of action under §1 of the Sherman AntiTrust Act, 15 U.S.C. §1, Defendants need only prove three elements: (1) the existence of an agreement, (2) which unreasonably restrains trade, that (3) caused damage to Defendants.  Abadir & Co. v. First Mississippi Corp., 651 F. 2d 422, 424 (5th Cir. 1981).  Defendants counterclaim sets forth each and every essential element in order to charge Plaintiffs with a violation of the Sherman and Clayton Antitrust Acts.

Specifically, Defendant/Counter-Plaintiffs' counterclaim sets forth the existence of an agreement between the parties at paragraph 47 of counterclaim - Count VI – Violation of Sherman Antitrust Act and Clayton Act.  The allegations of such an agreement leading to Plaintiff's unreasonable restraint on trade is set forth in paragraphs 48, 49 and 50.   The final element necessary to establish a Sherman Anti-Trust Act and Clayton Act violation,  damage caused to the

defendants/Counter-plaintiffs, is set forth in paragraph 51. Thus, based on the four corners of Defendants/Counter-Plaintiffs counterclaim, all necessary elements have been pled in order to sustain a cause of action for violation of the federal antitrust laws.

Since the Defendants/Counter-Plaintiffs have successfully raised a federal question, this Court has jurisdiction to hear such claims. Moreover, this Court has pendent jurisdiction to hear the state claims raised by Defendant/Counter-Plaintiff's Counterclaim. Title 28 U.S.C. §1367 provides that if the district court has jurisdiction over one claim, it can maintain jurisdiction over claims that lack independent basis of jurisdiction if those claims are "so related to claims" within the court's jurisdiction "that they form part of the same case of controversy under Article III of the United States Constitution." 28 U.S.C. §1367; H.B. General Corp v. Manchester Partners, L.P., 95 F.3d 1185 (3d Cir 1996).

The test for whether the claims are "so related" is if they derive from a "common nucleus of operative fact..." United Mine Workes v. Gibbs, 383 U.S. 715, 725, 86 S.Ct 1130, 1138, 16 L.Ed.2d 218 (1966). Further, the claims need only revolve around a "central fact pattern". White v. County of Newberry, 985 F.2d 168, 172 (4th Cir. 1993).

In the present case, Defendants/Counter-Plaintiffs claims derive from a common nucleus of fact. That is, its allegations that Plaintiffs/Counter-Defendants conspired, collaborated and/or contracted with each other to boycott Defendants/Counter-Plaintiffs for the purpose of setting prices, fixing prices,

creating a monopoly and thus damaging Defendants/ Counter-Plaintiffs is the central theme and allegation of each and every count of its counterclaim. This "common nucleus of fact" forms the basis of Defendants/Counter-Plaintiffs federal and state claims. Both the federal and state claims share significant if not identical elements therefore requiring one to rely on the other not only to form the basis of a central fact pattern but more importantly, for disposition. Therefore, since Defendants/Counter-Plaintiffs have sufficiently established a federal question under the Sherman Antitrust Act and Clayton Act, jurisdiction in this Court is proper. Additionally, supplemental jurisdiction is also proper in this case since the state claims form part of the same nucleus of fact with the federal claims. Wherefore, Plaintiffs/Counter-Defendants Motion to Dismiss based on failure to establish jurisdiction should be denied.

### C. Plaintiffs/Counter-Defendants Assert that Dade Defendants Fail to Establish Standing

Plaintiffs assert that Defendants/Counter-Plaintiffs do not have standing for their counter-action because they "do not establish that a single individual personally suffered any injury as a result of any of Plaintiff's alleged conduct". (See Plaintiffs/CounterDefendants Motion to Dismiss at Page 7). However, Plaintiffs/Counter-Defendants have presented no facts to support such an allegation and their argument is meritless.

In order for the Defendants to invoke standing in this Court they must show: (1) that they have personally suffered some actual or threatened injury as a

result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and ,(3) that it is likely to be redressed by a favorable decision. U.S. Fire Ins. Co. v. Caulkins Indiantown Citrust Co, 931 F.2d 744, 747 (11th Cir. 1991). Defendants/Counter-Plaintiffs allegations meet each and every element necessary under U.S.Fire Ins. Co. in order to establish standing. Specifically,

(1)   Paragraph 26 of Counterclaim stating Defendants/Counter-Plaintiffs overpaid the cost of insurance for years and suffered out of pocket monetary losses.

(2)   Paragraph 26 of Counterclaim stating that when accidents arose, coverage was denied and Defendants/Counter-Plaintiffs had to cover out of their own pockets;

(3)   Paragraph 49 stating that Defendants/Counter-Plaintiffs were intimidated, oppressed and the victims of Plaintiffs extortionist tactics

(4)   Paragraphs 60 and 62 stating that Defendants/Counter-Plaintiffs have suffered emotional distress as a result of Plaintiffs/Counter-Defendants actions.

The aforementioned injuries meet the first prong of U.S. Fire Ins. Co that Defendants/Counter-Plaintiffs have personally suffered some actual or threatened injury as a result of the alleged conduct of the Defendants/Counter-Plaintiffs.

As for the second prong, that the injury can be traced to the challenged action, the Counterclaim is replete with allegations that the actions of the Plaintiffs/Counter-Defendants were the proximate cause of such injury. See paragraphs 37, 41, 51 and 57.

Lastly, it is undeniable that the unlawful actions taken by Plaintiffs/Counter-Defendants against Defendants/Counter-Plaintiffs can be redressed by this Court with a favorable decision. Accordingly, based on having met the three prongs of the test, Defendants/Counter-Plaintiffs have met the threshold of <u>U.S. Fire Ins. Co</u> for invoking standing with this Court.

**D.    Plaintiffs/Counter-Defendants Assert that Dade Defendants Fail to State A Claim Upon Which Relief Can Be Granted**

Plaintiffs/Counter-Defendants assert that the Defendants/Counter-Plaintiffs fail to state a cause of action for each and every claim including (1) fraud, (2) negligent misrepresentation (3) civil theft (4) conversion (5) insurance fraud (6) antitrust violations (7) intentional or negligent infliction of emotional distress, (8) extortion and (9) violation of Florida's Civil Remedies for Criminal Practices Act. These arguments are without merit as further discussed below.

**I.    Defendant/CounterPlaintiffs have established a cause of action for fraud**

Rule 9 (b) of the Federal Rules of Civil Procedure imposes a heightened standard of pleading upon claims alleging fraud or mistake. Fed. R. Civ. P. 9(b). The standard however, "does not require detailed fact pleading of claims of fraud." <u>Arral Industries, Inc. v. Touch Entertainment</u>, 2000 WL 141269 (S.D. Fla. 2000). Federal Rule of Civil Procedure 9(b) is satisfied when the complaint "alleges fraud with sufficient particularity to permit the person charged with fraud…to have a reasonable opportunity to answer the complaint and adequate

information to frame a response".  Future Tech International, Inc. v. Tae II Media, Ltd., 944 F. Supp 1538, 1571 (S.D. Fla. 1996).

Plaintiffs/Counter-Defendants further challenge the Defendants/ Counter-Plaintiffs fraud claim by erroneously relying on Eight Circuit case law to address its argument stating that such an allegation "… must include such matters as the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby…".  However, the language of the Eighth Circuit case relied upon, Parnes v. Gateway 2000, Inc., 122 F.3d 539 (8th Cir. 1997) is not binding on this Court nor does it address the level of specificity that is required for a well-pled complaint of fraud.  The Eleventh Circuit has set out guidelines under Rule 9(b) for noting when a fraud count has been sufficiently pled.  That is "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure] which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief. "  Future Tech Int'l v. Tae II Media, Ltd., 944 F. Supp 1538 (11th Cir. 1996). "While allegations of date, time or place fulfill Rule 9(b)'s function, **nothing in the Rule requires them**. Id. at 1572. (Emphasis added).  "An allegation for fraud is sufficient if it alleges the nature and the subject of misrepresented subjects without reciting the precise words". Id.

In the present case, Defendants/Counter-Plaintiffs allegations of fraud are stated not only with specificity but also with enough detail to inform as to the

nature and precise subject matter of the fraudulent activity whereby allowing Counter-Defendants to frame an appropriate response.

In order to state a cause of action in fraud, the necessary elements must be stated with specificity. They are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representations will induce another to act on it; and (4) reliance on the representation to the injury of the other party. Lance v. Wade, 457 So. 2d 1008, 1011 (Fla. 1984).

Defendants/Counter-Plaintiffs counterclaim sets forth each and every element detailed above, with specificity, in its counter-claim, as required in order to sustain an action for fraud. Specifically, Defendants/Counter-Plaintiffs allege that the Plaintiffs/Counter-Defendants made false statements with respect to a material facts to the Defendants/Counter-Plaintiffs as follows:

    (a)    that they were fully insured;

    (b)    that they were paying dollar for dollar the actual cost of automobile insurance to the broker; and

    (c)    that each independent owner/operator driver was a named insured and beneficiary under the covering policy.

See Defendants/Counter-Plaintiffs' Counterclaim, paragraph 22.

Defendants/Counter-Plaintiffs further allege at Paragraph 23 of the Counterclaim that the Plaintiffs/ Counter-Defendants made these misrepresentations knowing that they were false in fact.

Defendants/Counter-Plaintiffs further allege at Paragraphs 24 and

25 of their Counterclaim that the Plaintiffs/ Counter-Defendants made these misrepresentations with the intention of having the Defendants rely on them.

Finally, Defendants/Counter-Defendants allege at Paragraph 26 of the Counterclaim that their reliance on the Plaintiffs/Counter-Defendants false representations caused them injury and damage.

Accordingly, Defendants/Counter-Plaintiffs have stated, with specificity, each and every required element in order to sustain a cause of action for fraud in order to bar dismissal of such claim.

## II.    Defendants/Counter-Plaintiffs have established a cause of action for negligent misrepresentation

The elements of a negligent misrepresentation action are (1) a false statement of a material fact; (2) that in the exercise of reasonable care the person should have known was false; (3) the statement was made with the intent to induce reliance on the statement; (4) the claimant reasonably relied on the misrepresentation; and (5) the claimant suffered loss as a result of such reliance. Florida Standard Jury Instructions, 613 So.2d at 1318.

Defendants/Counter-Plaintiffs counterclaim sets forth each and every element detailed above, with specificity, in its counter-claim, as required in order to sustain a cause of action for negligent misrepresentation. Specifically, Defendants/Counter-Plaintiffs allege that the Plaintiffs/Counter-Defendants made false statements with respect to a material facts to the Counter-Plaintiffs as follows:

    (a)    that they were fully insured;

    (b)    that they were paying dollar for dollar the actual cost of automobile insurance to the broker; and

    (c )   that each independent owner/operator driver was a named insured and beneficiary under the covering policy.

See Paragraph 27 of Defendants/Counter-Plaintiffs Counterclaim.

The counterclaim at paragraph 28 also alleges that these misrepresentations were made with reckless indifference for their truth and thus Plaintiffs should have known they were false.

In their counterclaim at paragraphs 28 through 30, Counter-Plaintiffs claim that these false statements were made with the intent to induce reliance on the statements and did in fact cause the claimants to reasonably rely on the misrepresentations. Finally, paragraph 33 states that as a "direct, proximate and legal result of these negligently false representations, the Defendants have been damaged". Accordingly, Defendants/Counter-Plaintiffs through their well-pled allegations are able to prove the necessary elements for a cause of action for negligent misrepresentation and therefore this cause should not be dismissed.

### III.    The Defendants/Counter-Plaintiffs have established a cause of action for civil theft

One is guilty of civil theft pursuant to Florida Statutes if he "knowingly obtains or uses or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) deprive the other personal of a

right to the property or a benefit from the property or (b) appropriate the property to his or her own use of to the use of any person not entitled to the use of the property". <u>Fla</u>. <u>Stat</u>. §812.014.

Counter-Plaintiffs have met the requirements for alleging an action for civil theft in its counterclaim as required under Florida Statutes in order to sustain a cause of action for civil theft. Specifically, Defendants allege that the Plaintiffs/Counter-Defendants automatically charged a standard ten percent from each and every Counter-Plaintiffs "for insurance purposes". However, these monies were never procured for that purpose but rather were pocketed by the Plaintiffs. See Counterclaim at paragraph 16. Moreover, in paragraphs 35 through 36 of Counter-Plaintiff counterclaim, Defendants/Counter-Plaintiffs again alleges the fact that Plaintiffs/Counter Defendants knowingly and openly robbed the Defendants/Counter-Plaintiffs of monies rightfully owed them by claiming it was "going towards insurance" when it was in fact being pocketed. By these actions, Plaintiffs/Counter Defendants knowingly obtained property, i.e. monies, rightfully belonging to Defendants/Counter-Plaintiffs with the intent to permanently deprive them of their use or entitlement to such monies. Based on Counter-Plaintiffs well pled allegations of civil theft, this cause of action should not be dismissed.

### IV.  Defendants/Counter-Plaintiffs have established a cause of action for conversion

In its Motion to Dismiss, Plaintiffs/Counter-Defendants misstate the Defendants/Counter-Plaintiffs allegations of conversion as stated in its

counterclaim. Specifically, Plaintiffs/Counter-Defendants state that "Defendants do not allege that Plaintiff was not authorized to withhold ten (10%) percent of the per-haul payment to cover the cost of insurance". (See Plaintiffs' Motion to Dismiss, page 19). On the contrary, in its counterclaim, the Defendants/Counter-Plaintiffs state that they were charged by the Plaintiff ten (10%) percent "for insurance" and further told by the Plaintiffs/Counter-Defendants that this was a "mandatory cost of insurance". (Counterclaim at page 8). However, the actual cost of the insurance is less than half of the price charged by Plaintiffs/Counter-Defendants, and the excess monies not appropriated for this purpose (if any were actually appropriated for this purpose) were simply pocketed. This amounts to a wrongful taking of monies by Plaintiffs/Counter-Defendants under the guise of "insurance", without authorization, to the direct detriment of Defendants/Counter-Plaintiffs.

Moreover, the fact that none of the blanket insurance policies purchased by Plaintiffs/Counter-Defendants even named the Defendants/Counter-Plaintiffs as beneficiaries or even existed to shield them from liability when claims actually arose[2], is further proof of the unlawful conversion of monies for

---

[2] There are specific instances alleged wherein several Defendants/Counter-Plaintiffs have been involved in accidents while hauling a particular load of one or more of the Plaintiffs/Counter-Defendants materials. When such accidents arose and insurance coverage was rightfully requested, the Plaintiffs/Counter-Defendants advised that there was no insurance in place, that it was not liable, and the Defendants/Counter-Plaintiffs had to cover such accidents out of their own pockets, evidencing the fact that no insurance was actually in place when it had been already charged by Plaintiffs/Counter-Defendants.

personal use of Plaintiff/Counter-Defendants without Defendants/Counter-Plaintiffs knowledge or authorization.

With the aforementioned allegations, Defendants/Counter-Plaintiffs have established a cause of action in conversion. That is, it has sufficiently and succinctly established all of the necessary elements for a cause of action in conversion and Plaintiffs/ Counter-Defendants motion to dismiss this count should be denied.

### V.    Defendants/Counter-Plaintiffs have established a cause of action for Insurance Fraud

Insurance is defined as a contract by which one party, for compensation called a premium, assumed particular risks of the other party and promises to pay him or his nominee a certain sum of money or its equivalent to perform some act of value on a specified contingency such as… the injury of someone or something by specified perils. Fla. Stat. §624.02; 30 Fla. Jur. 2d §1.

For purposes of the Florida Insurance Code, insurance is defined as a contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable contingencies. 30 Fla. Jur. 2d §97.

For purposes of the Florida Insurance Code, an "insurer" includes any person engaged as an indemnitor, surety or contractor in the business of entering into contracts for insurance. 30 Fla. Jur. 2d §97. Fla. Stat. §624.0323. "Person" includes an individual, insurer, **company**, association, organization, partnership,

trust, agent, broker, solicitor, service representative, adjuster and every legal entity. (Emphasis own). Fla. Stat. §624.04.

For purposes of the Florida Insurance Code, the term "transacting" in insurance includes any "solicitation or inducement, preliminary negotiations, effectuation of a contract of insurance, transaction of matters subsequent to effectuation of a contract of insurance and arising out of it. Fla. Stat. §624.10

Under the Florida Insurance Code, anyone who by unfair or deceptive acts or practices misrepresents, knowingly makes, issues, circulates or causes to be made, issued or circulated any estimate, illustration or statement which misrepresents the benefits, advantages, conditions or terms of any insurance policy, is guilty of insurance fraud. Fla. Stat. §626.9541.

Under the Florida Insurance Code, it is an "illegal dealing in premiums" is defined as "knowingly collecting any sum as a premium or charge for insurance, which is not then provided, or is not in due course to be provided". Fla. Stat. §626.9541 (o).

In its counterclaim, Defendants/Counter-Plaintiffs allege that the Plaintiff/Counter-Defendants charged and collected premiums from Plaintiffs/Counter-Defendants "for insurance purposes" when in fact such monies paid were never appropriated for that purpose nor was insurance ever provided. (See Counterclaim at page 16, paragraphs 43, 44 and 45). These allegations amount to insurance fraud as the Florida legislature has seen fit to define. The fact that Plaintiffs/Counter-Defendants knowingly made false

statements regarding insurance policies that never existed and misrepresented to Defendants/Counter-Plaintiffs that they were covered under such blanket policies, when in reality, they were not, are violations of the Florida Insurance Code as detailed above.   For the foregoing reasons, Plaintiffs/Counter-Defendants Motion to Dismiss this count should be denied.

### VI.    Defendants/Counter-Plaintiffs have established a cause of action for Intentional Infliction of Emotional Distress

In order to state a cause of action for intentional infliction of emotional distress, Counter-Plaintiffs must allege:  (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must be severe. Mendoza v. Borden, Inc.,  158 F.3d 1171 (11th Cir. 1998).

Counter-Plaintiffs counterclaim sets forth each and every element detailed above, with specificity, in its counter-claim, as required in order to sustain a cause of action for Intentional infliction of emotional distress. Specifically, Defendants allege that the Plaintiffs/Counter-Defendants intentionally and recklessly caused every outrageous act as detailed in every single paragraph of the counterclaim.  This outrageous conduct, which went beyond all bounds of decency and is utterly  intolerable in a civilized community, caused each and every Defendant/ Counter-Plaintiff (as well as their family members) to suffer not only monetary losses but severe mental pain, mental anguish and injury.

Defendants/Counter-Plaintiffs do not allege mere verbal abuse or physical conduct, rather severe damage to their livelihood and pure harrassment. Plaintiffs/Counter-Defendants intentional and fraudulent overcharging, their "take it or leave it" attitude when they knew that they controlled the market and there was no other means for Defendants/ Counter-Plaintiffs to make a living or retain their livelihood, their misappropriation of monies stolen from Defendants/Counter-Plaintiffs, as well as their price-fixing and subsequent violations of antitrust laws culminating in a work stoppage, all rise to the level of intolerable and egregious behavior to sustain a claim of intentional infliction of emotional distress.   For these reasons, Plaintiffs/Counter-Defendants motion to dismiss should be denied.

### VII.    Defendants/Counter-Plaintiffs have established a cause of action for Extortion

Florida's Extortion Statutes prohibit any act, utterance or communication that constitutes malicious threats to do injury to another person, reputation or property if the threats are made with the intent to extort money or compel another to act or refrain from acting.  Fla. Stat. §836.05.  Defendants/Counter-Plaintiffs have stated a cause of action against Plaintiffs/Counter-Defendants for extortion by alleging that Plaintiffs/Counter-Defendants threatened the individual Defendants/ Counter-Plaintiffs with several acts including but not limited to (1) threatening the loss of a job if they did not accept their ridiculously

low rates[3], he/she would in essence be out of a job) (Counterclaim at page 21,

paragraph 68); (2) threatening to file a lawsuit (as they in fact did) if the

owner/operator drivers voiced their concerns over their economic situation; and

(3) extracting monies from Defendants/Counter-Plaintiffs by overcharging for

"insurance" and stating that such monies had to be paid or the individual

owner/operator drivers could not work for the Plaintiffs/Counter-Defendants,

when not working for them constituted no work since they controlled the

market. Plaintiffs/Counter-Defendants assertions that these were not direct or

veiled threats but rather that "Plaintiffs had the right to select who they will do

business with, they can also set the terms of that relationship" and thus this

treatment was not extortion, is false. Since the Plaintiffs/Counter-Defendants

controlled the market Defendants/Counter-Plaintiffs had no choice but to

succumb to these direct threats. This "use of fear of economic loss as leverage" is

well over the amount as tolerated by the Court in Brokerage Concepts v. U.S.

Healthcare, Inc., 140 F.3d 494 (3rd Cir. 1998), cited by the Plaintiffs/Counter-

Defendants. The Plaintiffs/Counter-Defendants actions were not only

inappropriate by a business that controls the share of the market but also

resulted in threats to the direct property of Defendants/ Counter-Plaintiffs. Such

action compelled the Defendants/ Counter-Plaintiffs to continue to work for

Plaintiffs/Counter-Defendants and pay monies "for insurance" against their will.

---

[3] Since the Plaintiffs/Counter-Defendants (particularly CD Tupler) controlled the market through
its monopoly, its used this leverage to its advantage since it knew that if an individual

This malicious and extortionist conduct rises to the level necessary to sustain a cause of action for extortion and thus Plaintiffs/Counter-Defendants Motion to Dismiss this count should be denied.

### VIII.  Defendants/Counter-Plaintiffs have established a cause of action for Florida RICO claims

In order to sustain a cause of action under Florida RICO statutes, Defendants/Counter-Plaintiffs need to establish that Plaintiffs/Counter-Defendants conspired and collaborated to engage in a pattern of criminal activity which damaged the Defendants/Counter-Plaintiffs. Fla. Stat. §772.101. Defendants/Counter-Plaintiffs allegations contained in each count of their counterclaim, detailing the fact that on more than two occasions Plaintiffs/Counter-Defendants engaged in a continuous pattern of fraud, civil theft, insurance fraud, violation of Sherman and Clayton Acts and extortion, (all criminal acts) is enough to establish a cause of action under Florida RICO statutes. Particularly, that Plaintiffs/Counter-Defendants formulated an enterprise which engaged in a pattern of continuous criminal activity which activity resulted in damage to Defendants/Counter-Plaintiffs. (See Counterclaim page 23 – 24, paragraphs 73-80). Based on the above, Defendants/Counter-Plaintiffs claims are viable claims and Plaintiffs/Counter-Defendants Motion to Dismiss should be denied.

---

owner/operator driver did not accept their work at such a ridiculously low rate work he/she would essentially be out of a job.

### IX.    Defendants/Counter-Plaintiffs have established a
###        cause of action for violation of Federal and State Antitrust laws

Plaintiffs/Counter-Defendants base their argument that

Defendants/Counter-Plaintiffs' allegations of price-fixing "for the purpose of

effecting their plan to set prices and affect commerce" does not give rise to a

federal or state antitrust violation.  Ironically, however, in its own Motion to

Dismiss at page 10,  Plaintiffs/Counter-Defendants rely on the plain language of

Local 36 of Int'l Fisherman & Allied Workers of America, quoting "price-fixing

alone, however, is a *per se* violation of antitrust laws". Local 36 of Int'l Fisherman

& Allied Workers of America, 177 F.2d 331.

Defendants/Counter-Plaintiffs counterclaim is replete with allegations

that Plaintiffs/Counter-Defendants conspired, collaborated and contracted with

each other to fix prices and set minimum tariffs to be paid to

Defendants/Counter-Plaintiffs, in order to affect commerce.  These allegations of

price fixing, as per Local 36 of Int'l Fisherman, are *per se* violations of federal and

state antitrust laws.

Moreover, when Defendants/Counter-Plaintiffs voiced their concerns

with Plaintiffs/Counter-Defendants in order to resolve their problems,

Plaintiffs/Counter-Defendants immediately threatened retaliatory conduct by

stating it would instigate a suit against them.  Such actions, standing alone, are in

and of themselves violations of federal and state antitrust laws.  For the

foregoing reasons, Plaintiffs/Counter-Defendants Motion to Dismiss should be denied.

## CONCLUSION

For the reasons set forth herein, Defendants/Counter-Plaintiffs respectfully request that this Honorable Court deny Plaintiffs/Counter-Defendants' Motion to Dismiss.

Respectfully submitted,

Richard J. Diaz
F.B.N. 0767697
2701 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-1122
Facsimile: (305) 285-0354
e-mail: rick@rjdpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this _30th_ day of August, 2000 to Ed Trent, Esq., Fisher & Phillips LLP, 2300 NationsBank Tower, One Financial Plaza, Ft. Lauderdale, FL 33394 and Hosey Hernandez, Esq., 2701 S. Bayshore Drive, Suite 602, Coconut Grove, FL 33133.

Richard J. Diaz, Esq.

mswd\sdtg\ans-aff-d-cc\mvg\4768