UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 00-6223-CIV-GOLD/Simonton

AUSTIN TUPLER TRUCKING, INC., et. al.,

        Plaintiffs,

vs.

SUPPORT DUMP TRUCKING GROUP, INC.,
JUAN ARAGONES, OSCAR DE LEON,
REYNALDO RODRIGUEZ, RAFAEL D.
JIMENEZ, NORVEL IGARZA, ALAYN
HERNANDEZ, EDUARDO RODRIGUEZ,
OSMELY JIMENEZ, OSCAR SUAREZ,
JULIO GOMEZ, RIGODERTO PUPO,
RENIER MARTINEZ, GIRALDO VICTORIA,
VICTOR MORALES, JOHN DOE 1 through 300,
et. al.,

        Defendants.
_____/

**PLAINTIFFS' AUSTIN TUPLER TRUCKING, INC., ET. AL.'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM**

        Pursuant to Rule 7.1(C), S.D. Fla. L.R., Plaintiffs Austin Tupler Trucking, Inc., et. al. ("Plaintiffs") file this Reply to Defendants' Response to Plaintiffs' Motion to Dismiss Defendants' Counterclaim. Defendants' Counterclaim should be dismissed in its entirety because Defendants' have failed to establish standing, because this Court lacks jurisdiction over Defendants' state law claims, and because Defendants have failed to establish a single viable claim in their 12 Count Counterclaim.

I. **DEFENDANTS' FAIL TO ESTABLISH STANDING.**

Amazingly, Defendants continue to fail to identify a single Defendant who has suffered any personal harm as a result of the alleged conduct attributable to unidentified brokers. Defendants make a wide range of allegations without identifying who engaged in such conduct or who suffered as a result of the conduct. Defendants admit in their Response that they have the burden of demonstrating that they suffered a personal injury. Response p. 6-7. There are five corporate Plaintiffs named in the Counterclaim as defendants. There are five individual Defendants named in the Counterclaim as plaintiffs along with up to 900 John Doe plaintiffs. None of the individual Defendants is named as having paid a single Plaintiff anything to be listed on the Plaintiff's blanket insurance policy. The only allegation attributed to a single Plaintiff is that Austin Tupler Trucking gave a driver an insurance card referenced as Exhibit "A" to the Counterclaim.[1] By failing to identify *who* personally suffered some alleged injury and *who* engaged in the alleged conduct causing such injury, Defendants' have failed to establish standing.

At a minimum, a complaint, or in this case a counterclaim, must provide sufficient notice of who is bringing a claim and it must connect a specific defendant with the alleged violation or claim. *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992). Indeed, these "are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). "Standing is a jurisdictional prerequisite to a suit in federal court." *S.J. Groves & Sons, Co. v. Fulton County*,

---

[1] The undersigned has still never received a copy of this insurance card.

2

920 F.2d 752, 757 (11th Cir. 1991)(citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-476, 102 S.Ct. 752, 760-761, 70 L.Ed.2d 700 (1982)). "The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-156, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990). Because the Defendants do not establish that a single individual personally suffered any injury as a result of any of Plaintiffs' alleged conduct, they have failed to establish standing to bring their claims.

## II.  THIS COURT SHOULD NOT EXERCISE JURISDICTION OVER DEFENDANTS' INSURANCE CLAIMS SET FORTH IN COUNTS I-V AND VIII-XII OF THE COUNTERCLAIM.

In stressing that the Court has jurisdiction over Defendants' claim in Count IV alleging a violation of the Sherman Anti-Trust Act and, therefore, has supplemental jurisdiction over Defendants' state law claims in the other 11 Counts of the Counterclaim, Defendants completely ignore the fact that 28 U.S.C. § 1367(c)(1) & (2), allows the Court to decline to exercise supplemental jurisdiction over novel and complex issues of state law. In Counts I-V, and VIII-XII, Defendants assert a variety of claims related to alleged insurance practices. These claims are wholly independent of Defendants' claims in Counts VI-VII alleging violations of state and federal antitrust laws and wholly independent of Plaintiffs' claims of violations of federal and state antitrust laws raised in the First Amended Complaint.

Not only are these claims independent of all other claims pending in this case, but they are matters of state law and matters of first impression. Defendants do not cite a single Florida court opinion supporting their theory in this case regarding alleged insurance violations. Regardless of

the caption on an individual Count, Counts I-V and VIII-XII all concern Defendants' allegations that they overpaid for insurance coverage. The ability of brokers such as Plaintiffs to allow independent dump truck owner-operators to obtain legally required insurance coverage by allowing them to come under the brokers' blanket policies has been an integral part of the industry for decades. Any decision interpreting state insurance laws, including fees that may be charged to those who elect to come under a broker's blanket policy, will have far reaching effects better left to the state courts. Accordingly, this Court should decline to exercise jurisdiction over Counts I-V and VIII-XII of the Counterclaim. *Winn v. North American Philips Corp.*, 826 F. Supp. 1424, 1425 (S.D. Fla. 1993); *Schwartz v. Systems Software Assocs.*, 813 F. Supp. 1364, 1368 & n.4 (N.D. Ill. 1993).

Alternatively, should the Court dismiss Defendants' claims in Count VI asserting violations of the Sherman Anti-Trust Act, the only claim based on federal law, then there would be no basis for this Court to exercise supplemental jurisdiction over the remaining claims in Defendants' Counterclaim. 28 U.S.C. § 1367; Rules 8(a)(1) and 13(b), Fed. R. Civ. P.; 2 *Moore's Fed. Prac.* § 8.03[2] (Mathew Bender 3d ed.). As set forth below and in Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss Counterclaim, Defendants' have failed to set forth a valid claim under state and federal antitrust laws and those claims should be dismissed. Accordingly, there is no basis for this Court to exercise jurisdiction over the remaining claims in Defendants' Counterclaim.

III. **DEFENDANTS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED IN ANY OF THE COUNTS OF THE COUNTERCLAIM.**

A. **Defendants do not state a claim for fraud or negligent misrepresentation.**

Defendants assert they have stated with specificity their claims of fraud and negligent misrepresentation because they assert they were falsely told "(a) that they were fully insured; (b) that they were paying dollar for dollar the actual cost of automobile insurance to the broker; and (c) that each independent owner/operator driver was named insured and beneficiary under the covering policy." Response p. 10. Rule 9(b), Fed. R. Civ. P., requires more than generalized claims of fraud. "The plaintiff's complaint must allege the details of the defendants alleged fraudulent acts, when they occurred, and who engaged in them." *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th Cir. 1994). Defendants' assertions in their Response miss the point of Plaintiffs' contention and Rule 9's requirements. Defendants do not identify ***who*** allegedly made the false representation, ***to whom*** the false representation was made, or when these allegedly false statements were made. The Counterclaim only asserts generically that "the Plaintiffs/Counter-Defendants" made such false statements to "Defendants/Counter-Plaintiffs". As noted above, there are five independent corporate Plaintiffs and none are specifically identified as having made any representation. Additionally, there are five named Defendants and 900 unnamed Defendants/Counter-Plaintiffs, but none of them are identified as having been subjected to these allegedly false representations. Defendants' allegations are so vague that Plaintiffs do not "have a reasonable opportunity to answer the complaint and adequate information to frame a response." *Future Tech International, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1571 (S.D. Fla. 1996). Defendants' utter failure to link a single Plaintiff to a specific allegation constituting fraud regarding

5

a single Defendant is insufficient under Rule 8, let alone Rule 9(b). Such allegations are required to state a claim for fraud. *Id.* at 1572. Defendants clearly fail to satisfy Rule 9(b)'s requirements. Accordingly, Defendants' claims of fraud and negligent misrepresentation in Counts I and II must be dismissed.[2]

### B. Defendants fail to state a claim for theft or conversion.

Defendants admit they were told how much they would be charged for being allowed to come under a broker's insurance policy. They also admit they have no basis to claim that they were not provided with insurance. See Response p. 14 ("However, the actual cost of the insurance is less than half of the price charged by Plaintiffs/Counter-Defendants, and the excess monies not appropriated for this purpose (if any were actually appropriated for this purpose) were simply pocketed."). Defendants claim of paying too much for insurance coverage does not amount to theft or conversion because they received what they bargained for in return for the price they were told they would have to pay.[3]

---

[2]Additionally, as set forth in Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss Defendants' Counterclaim, Defendants do not plead any facts to suggest how the alleged false statements were material to their decision to obtain their insurance coverage under a broker's blanket policy. Without such an allegation, Defendants do not even plead sufficient facts to support each element of their claim.

[3]Contrary to Defendants' vague allegations in their Response, the Counterclaim does not set forth any allegations that the Defendants were not covered under the blanket policy when they paid for such coverage or that when they needed insurance coverage the insurance company denied coverage claiming they were not listed on the blanket policy. Defendants again assert in a footnote that when some driver was in an accident he was told by the broker that the broker was not responsible and the driver was responsible for covering the costs of the accident. No Defendant driver is ever identified and no Plaintiff is ever identified. Accordingly, such accusations are irrelevant to Defendants' claims. Defendants still fail to identify a single instance where the insurance company that issued the policy denied coverage because the broker did not list the driver on the policy after collecting a fee from the driver. Accordingly, there is no basis in the Counterclaim to find that the Defendants that did obtain insurance coverage from a broker under its blanket policy did not get what they bargained for.

6

### C. Defendants fail to state a claim for insurance fraud.

In their Response, Defendants assert, "Plaintiff/Counter-Defendants charged and collected premiums from Plaintiffs/Counter-Defendants [sic] 'for insurance purposes' when in fact such monies paid were never appropriated for that purpose nor was insurance ever provided. (See Counterclaim at page 16, paragraphs 43, 44 and 45)." Response p. 16. Paragraphs 43-45, however, do not allege that no insurance was ever provided. Those paragraphs allege that Florida law prohibits someone not licensed to sell insurance from selling insurance (paragraph 43), that Plaintiffs "have charged an excess premium over their actual cost for such insurance" and therefore committed insurance fraud (paragraph 44), and that Plaintiffs were not licensed to sell insurance (paragraph 45). There are no allegations in the Counterclaim that Defendants who paid money to a Plaintiff for the purpose of being covered under a blanket insurance policy was not so covered.

Additionally, Defendants' arguments completely ignore that Plaintiffs did not sell "insurance" under Florida law because no Plaintiff ever assumed any risk to act as an indemnitor or surety for any Defendants. Fla. Stat. § 624.03. Because Plaintiffs did not sell insurance, and therefore, did not collect insurance premiums, the Florida Insurance Code does not apply to Plaintiffs. *Farley v. Gateway Insurance Co.*, 302 So.2d 177, 179 (Fla. 2d DCA 1974). Additionally, Fla. Stat. § 626.9541(o), does not apply in this case because there are no allegations that the alleged 10% fee or "premium" was not for the purpose of including a Defendant under the blanket policy. Defendants' only objection is that they believe they paid too much for such coverage, which is not sufficient to state a claim under the plain language of Fla. Stat. § 626.9541(o). Accordingly, Defendants' claims of insurance fraud should be dismissed.

### D. Defendants fail to state a claim for intentional or negligent infliction of emotional distress.

As set forth in Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss Defendants' Counterclaim, Defendants' allegations do not begin to satisfy the legal standard necessary to support a claim for intentional or negligent infliction of emotional distress. Defendants do not cite a single opinion supporting their claims that allegedly being required to pay too much for insurance coverage will support a claim for intentional or negligent infliction of emotional distress. As set forth in Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss Defendants' Counterclaim, Defendants have not stated a claim upon which relief can be granted in Counts VIII and IX of the Counterclaim.

### E. Defendants fail to state a claim for extortion.

To state a claim for extortion under Fla. Stat. § 836.05, Defendants must prove that Plaintiffs maliciously threatened injury to a Defendant or a Defendant's property unless he or she paid the Plaintiffs money. Defendants admit they had the option of obtaining insurance coverage directly from an insurance company of their choosing. Defendants, as independent contracts, also had the right to contract with any broker they wanted. Likewise, Plaintiffs have the right to contract with independent owner-operators of their choosing. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137, 119 S.Ct. 493, 499, 142 L. Ed. 2d 510 (1998). Assuming a Plaintiff gave preferential treatment to a driver who came under the broker's policy over another driver who did not does not constitute extortion under any definition. The use of fear of economic loss as leverage in a business transaction is entirely appropriate because each side offered "the other property, services, or rights it legitimately owns or controls." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 523 (3rd Cir.

1998)(quoting *United States v. Capo*, 791 F.2d 1054, 1062 (2nd Cir. 1986), *vacated in part, on other grounds*, 817 F.2d 947 (2nd Cir. 1987)(en banc)). Accordingly, Defendants fail to state a claim for extortion in Count X of the Counterclaim.

**F.  Defendants have failed to state a claim under Florida's RICO statute.**

To establish a claim under Florida's RICO statute, Defendants must establish a pattern of criminal activity. As noted above, they are unable to establish any of the underlying actions they assert constitute a pattern of criminal activity. Accordingly, Counts XI and XII of the Counterclaim must be dismissed.

**G.  Defendants have failed to state a claim for violation of federal and state antitrust laws.**

In their Response, Defendants state, "Defendants/Counter-Plaintiffs [sic] counterclaim is replete with allegations that Plaintiffs/Counter-Defendants conspired, collaborated and contracted with each other to fix prices and set minimum tariffs to be paid to Defendants/Counter-Plaintiffs, in order to affect commerce." Response p. 21. Again Defendants ignore Plaintiffs' arguments. Paragraph 9 of the Counterclaim asserts that each Plaintiff, individually, decided what it would pay the independent owner-operators that contracted with it. That does not constitute an antitrust violation any more than a retailer deciding what it will charge all customers for an item. The setting of a price to pay suppliers, in this case suppliers of dump trucking services, is entirely appropriate and not a violation of the antitrust laws. *Brokerage Concepts*, 140 F.3d at 509.[4]

---

[4] Defendants assert that Plaintiff Austin Tupler Trucking, Inc., had sufficient control of the market to control prices. No facts are alleged to support such an allegation. Indeed, Defendants allegations prove the opposite by admitting Defendants had the ability to contract with any number of multiple brokers in the industry. As such, Tupler's alleged independent actions are not antitrust violations and there is no monopoly. *Brokerage Concepts*, 140 F.3d at 518.

Defendants claim that Plaintiffs' pursuit of their claims set forth in the First Amended Complaint constitutes an antitrust violation. Not only does such a claim make no sense in light of the purpose of the antitrust statutes, but Defendants cite to no cases suggesting that a party pursuing its legal rights is thereby violating the antitrust laws. Indeed, the validity of Plaintiffs' claims is set forth in their Motion for Preliminary Injunction and Memorandum of Law in Support of Their Motion for Preliminary Injunction currently pending before this Court. Indeed, Defendants have never responded to Plaintiffs' Motion for Preliminary Injunction although the Court set the time for responding to the motion for April__, 2000. See Order _____ dated April__, 2000.

As set forth more fully in Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss Defendants' Counterclaim, Defendants have not stated a claim for violation of state and federal antitrust laws. Accordingly, Counts VI and VII alleging violations of the Sherman Antitrust Act and the Florida Antitrust Act should be dismissed.

## IV. CONCLUSION

For the reasons set forth herein and in Plaintiffs' Memorandum of Law in Support of Their Motion to Dismiss Defendants' Counterclaim, Plaintiffs respectfully request the Court dismiss Defendants' Counterclaim in its entirety.

Respectfully submitted this 12 day of September, 2000.

By: _____

FISHER & PHILLIPS LLP
Bank of America
One Financial Plaza, Suite 2300
Fort Lauderdale, Florida 33394
Telephone:  (954) 525-4800
Facsimile:  (954) 525-8739

Charles S. Caulkins
(Fla. Bar No. 0461946)
James C. Polkinghorn
(Fla. Bar. No. 0376892)
Edward H. Trent
(Fla. Bar No. 0957186)
Attorneys for Plaintiffs.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of PLAINTIFFS' AUSTIN TUPLER TRUCKING, INC., ET. AL.'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM was served by First Class United States mail this 12th day of September, 2000, upon the following:

Richard Diaz, Esq.
Richard A. Diaz, P.A.
2701 Southwest 3rd Avenue
Miami, Florida 33127-2335
Attorneys for Support Dump
Trucking Group, Inc., Juan Aragones,
Oscar De Leon, and Renier Martinez

Hosey Hernandez, Esq.
Hosey Hernandez, P.A.
Coconut Grove Bank Building
2701 South Bayshore Drive, Suite 602
Coconut Grove, Florida 33133
Attorneys for Support Dump Trucking
Group, Inc.

_____
Attorney