UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6223-CIV-GOLD/SIMONTON



FILED by _____ D.C.

MAR 21 2001

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

AUSTIN TUPLER TRUCKING, INC., et. al,

    Plaintiffs/Counter-Defendants,

vs.

SUPPORT DUMP TRUCKING GROUP,
INC., et. al,

    Defendants/Counter-Plaintiffs.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

**THIS CAUSE** is before the court upon the motion to dismiss (DE #122) filed by the plaintiffs, Austin Tupler Trucking, Inc., et al. (collectively "the plaintiffs"). The plaintiffs filed a three-count amended complaint against Support Dump Trucking Group, Inc., et al. alleging: count I, violation of the Sherman Antitrust Act and the Clayton Act, 15 U.S.C. §§ 1-7, 12-26; count II, violation of the Florida Antitrust Act of 1980, Fla. Stat. §§ 542.15-542.36; and count III, intentional interference with business relationships. Some of the defendants (John Doe Association, a/k/a The Commission n/k/a Support Dump Trucking Group, Inc. ("Support Dump Trucking"), Juan Aragones, Oscar de Leon, Rafael Jimenez, Alayn Hernandez, Renier Martinez, and John Does Number 1-900 (collectively "the defendants")) filed a counterclaim against the plaintiffs alleging: count I, fraud; count II, negligent misrepresentation; count III, civil theft; count IV, conversion; count V, insurance fraud; count VI, violation of the Sherman Antitrust Act and the Clayton Act, 15 U.S.C. §§ 1-7, 12-26; count VII, violation of the Florida Antitrust Act of 1980, Fla. Stat. §§ 542.15-542-36; count VIII,

intentional infliction of emotional distress; count IX, negligent infliction of emotional distress; count X, extortion; count XI, conspiracy pursuant to the Civil Remedies for Criminal Practices Act (Florida RICO statute), Fla. Stat. § 772.101; and count XII, violation of the Civil Remedies for Criminal Practices Act (Florida RICO statute), Fla. Stat. § 772.101. It is this counterclaim that the plaintiffs seek to dismiss for lack of subject matter jurisdiction, lack of standing, and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, the plaintiffs' motion is granted without prejudice.

## Procedural History and Factual Background

### I.   The Parties

The plaintiffs in this case are Florida corporations engaged in the truck brokerage business. (Pl. Am. Compl. at ¶ 7; Def.'s Ccl. at ¶ 3). They contract with independent truck owner-operators, who haul construction materials, such as sand or lime rock. (Pl. Am. Compl. at ¶ 7; Def.'s Ccl. at ¶ 3). The defendants are independent truck owner-operators who contract with the plaintiffs to haul various materials based on contracts entered into by the plaintiffs with third parties. (Pl. Am. Compl. at ¶ 10; Def.'s Ccl. at ¶ 3).

### II.   The Plaintiffs' Complaint

On February 2, 2000, the defendants initiated a work stoppage for all independent truck owner-operators in South Florida. (Pl. Am. Compl. at ¶ 17). On February 15, 2000, the plaintiffs filed their initial complaint, which primarily alleged antitrust violations. According to the plaintiffs, the defendants engaged in the work stoppage threatened, harassed, and assaulted the plaintiffs' customers and suppliers. (Pl. Am. Compl. at ¶¶ 24,25). The plaintiffs claimed that the defendants attempted to form a monopoly by collectively soliciting a single broker to agree to their demands

in exchange for the defendants' promise not to do business with any other brokers, including the plaintiffs. (Pl. Am. Compl. at ¶ 27).

### III. The Defendants' Counterclaim

On June 2, 2000, defendants Juan Aragones, Oscar de Leon, Rafael Jimenez, Alayn Hernandez, and Renier Martinez filed a counterclaim against the plaintiffs.[1] Their twelve-count complaint is based upon two theories of recovery: price fixing and fraudulent insurance practices. According to the defendants, the plaintiffs and approximately twenty-five other unnamed brokers have set and followed a "secret" tariff rate sheet setting a fixed price for payment to the independent owner-operators with whom they contract. (Def.'s Ccl. at ¶ 6). This tariff was imposed by the plaintiffs and never was negotiated between the plaintiffs and defendants. (Def.'s Ccl. at ¶ 7). The defendants claim that the plaintiffs' practice constitutes uniformity in pricing because the plaintiffs have operated under the same tariff for years, and any deviation in prices has been negligible. (Def.'s Ccl. at ¶¶ 8, 10). According to the defendants, the plaintiffs' "strong-arm" position in the marketplace has left them with no choice but to reluctantly yield to the low fixed hauling rates set by the plaintiffs. (Def.'s Ccl. at ¶ 12).

The defendants also claim that the plaintiffs have engaged in a fraudulent automobile insurance scheme. The plaintiffs charged the independent owner-operators a standard ten percent retainage off of the gross payment per haul for insurance purposes, but the actual price of the insurance purchased by the plaintiffs was one-half or less than one-half of the ten percent price.

---

[1] It is not clear from the face of the countercomplaint whether John Does 1-900 have joined in the counterclaim, but the countercomplaint excludes that Support Trucking as a counter-plaintiff. (Def. Ccl. at 4).

3

(Def.'s Ccl. at ¶ 16). The plaintiffs allegedly would retain the excess insurance funds and name themselves as the policies' beneficiaries, rather than the defendants, in whose names the policies should have been purchased. (Def.'s Ccl. at ¶ 16). Alternatively, in an attempt to secure a less expensive group policy, some brokers would represent to their insurance agents that they had less independent owner-operators working for them than they actually did. (Def.'s Ccl. at ¶ 21). In order to create the impression that the defendants were covered by the brokers for automobile insurance, the plaintiffs provided an "illusory document" titled "Florida Automobile Insurance Card." (Def.'s Ccl. at ¶ 18). Because the plaintiffs never actually purchased valid insurance, when any one of the defendants became involved in an automobile accident while working for the plaintiffs, he or she was denied the benefit of legal representation for the money that was paid for insurance coverage. (Def.'s Ccl. at ¶ 20). In sum, the plaintiffs falsely represented to the defendants that they were fully insured, were paying dollar for dollar the actual cost of automobile insurance, and that each independent owner-operator was a named insured and beneficiary under a policy. (Def.'s Ccl. at ¶ 22).

IV.   **Procedural History**

In September of 2000, the court granted the plaintiffs a consent permanent injunction against the following defendants: Osmely Jimenez, Alayn Hernandez, and Reynaldo Rodriguez. Additionally, the work stoppage that was the subject of the plaintiff's initial and amended complaints has ceased. On January 26, 2001, the court held a status conference in order to determine whether this case would require further supervision by the court. Because the plaintiffs indicated that the

court should rule on the merits of their motion to dismiss the counterclaims of the remaining defendants, and the defendants indicated that they would continue to prosecute their counterclaim, the plaintiffs' motion to dismiss is now ripe for consideration.

## Standard for Motion to Dismiss

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1983). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support

the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## Analysis

In support of their motion to dismiss, the plaintiffs argue that the defendants do not have standing to bring suit and that the court lacks subject matter jurisdiction over the counterclaim. As an alternative argument, the plaintiffs contend that, if the court finds that it has jurisdiction over the dispute, it must dismiss the counterclaim under Federal Rule of Civil Procedure 12(b)(6). These arguments are addressed below in more detail.

### I.  Standing

Before this court can consider the merits of the defendants' counterclaims, the defendants must establish the requisite standing to sue. *See Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S. Ct. 1717, 1722 (1990). Article III of the United States Constitution gives federal courts jurisdiction over only "cases and controversies," and the doctrine of standing identifies those disputes that are appropriately resolved through the judicial process. *See Whitmore*, 495 U.S. at 154-55, 110 S. Ct. at 1722. In order to establish Article III standing, a litigant must show the following: (1) it has suffered an "injury in fact"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envt. Svcs., Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704 (2000) (finding that plaintiffs had satisfied standing requirement).

#### A.  The Elements of Standing

According to the plaintiffs, the defendants have failed to satisfy the standing requirements because they have not alleged that a single individual personally suffered any injury. In order to satisfy the "injury in fact" requirement, a litigant must show that the injury is qualitatively and temporally concrete, and "distinct and palpable," as opposed to merely "abstract." *Whitmore*, 495 U.S. at 155, 110 S. Ct. at 1723 (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2205-06 (1975) and *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S. Ct. 669, 675 (1974)). According to the plaintiffs, no defendant has personally suffered a concrete, distinct and palpable injury. Instead, the counterclaim merely "asserts that there was a lot of illegal conduct taking place. . . ." Pl.'s Mtn. at 7. The plaintiffs rely on the generality of the defendants' allegations in support of their argument. For example, the countercomplaint states that the plaintiffs "have enriched themselves at the *expense of these hundreds* of owner/operator drivers and *their respective families* for those 20 years." Def. Ccl. at ¶ 12 (emphasis added). Also, the complaint alludes to tortious conduct by the "Counter-Defendants [plaintiffs] and other brokers," who are not named as defendants in the countercomplaint. The plaintiffs argue that the defendants have no standing to seek redress from harm allegedly caused by these unnamed parties.

While the plaintiffs correctly point out that the countercomplaint is replete with general allegations regarding unnamed plaintiffs and defendants, it is also true that the defendants do specify a certain group of plaintiffs and defendants involved in this action. The counterclaim describes the counter-plaintiffs as "independent/owner operator dump truck drivers," and elsewhere in the answer these independent/owner operators are specifically identified as Juan Aragones, Oscar de Leon,

7

Rafael D. Jimenez, Alayn Hernandez, and Renier Martinez. Collectively, they refer to themselves as the "Group 1 Defendants." Def. Ccl. at ¶ 2, p. 1. Although the counterclaim does not use the surnames of the defendants, it contains allegations that refer to them either as "Counter-Plaintiffs" or "independent owner/operator driver". Aragones, de Leon, Jimenez, Hernandez, and Martinez have chosen to incorporate themselves by reference into the terms "Counter-Plaintiffs" and "independent owner/operator", rather than repeating their surnames within each allegation. *See, e.g.,* Def. Ccl. at ¶¶ 22 ("All Counter-Defendants have made representations to the Counter-Plaintiffs that they were fully insured. . . ."), 26 ("As a direct, proximate and legal result of these false representations, the independent owner/operator drivers (Counter-Plaintiff–not including SDTG) have been damaged."). There is no authority to support the plaintiffs' argument that the defendants must name themselves individually throughout the counterclaim. The defendants can just as well satisfy the injury prong of standing analysis by alleging that they were injured as "Counter-Plaintiffs" and "independent owner/operator drivers." Similarly, the defendants may satisfy the causation prong by incorporating the names of the plaintiffs under the title "Counter-Defendants", rather than referring to them individually each time they allege misconduct. *See* Def. Ccl. at p. 4. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563, 112 S. Ct. 2130, 2137 (1992) (stating that, on a motion to dismiss for lack of standing "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim'") (citations omitted).

It must be noted, however, that the defendants do not have standing to assert injuries inflicted

8

by unnamed brokers. *See* Def. Ccl. at ¶ 21. Additionally, without seeking class certification, they cannot assert claims on behalf of "hundreds of owner/operator drivers". Def. Ccl. at ¶ 12. Accordingly, the defendants' allegations regarding unnamed parties must be stricken from the counterclaim.

### B. Prudential Concerns

The plaintiffs contend that, even if the court were to find that the defendants have met the constitutional requirements for standing, it still should find that the defendants lack standing in this case. The United States Supreme Court has listed three considerations that discourage judicial action despite a party's satisfaction of the standing requirements: (1) assertion of a third party's rights; (2) allegation of a generalized grievance instead of an injury peculiar to the litigant; and (3) assertion of an injury outside the statute's or constitutional provision's zone of interest. *See S.J. Groves & Sons Co. v. Fulton County*, 920 F.2d 752, 757 (11th Cir. 1991) (citing *Valley Forge Christian Colleve v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75, 102 S. Ct. 752, 759-60 (1982)). These prudential considerations are based on the principle that "a litigant must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights of third parties, even when the very same illegal act that affects [the] litigant also affects the third party." *Resolution Trust Corp. v. Rowe*, 1993 WL 183512 *3, No. 90-20114 (N.D. Cal. 1993) (citing *United States Dept. of Labor v. Triplett*, U.S. , 110 S. Ct. 1428, 1431 (1990)). According to the plaintiffs, the defendants' counterclaim must be dismissed because it is an attempt to assert third parties' rights and generalized grievances.

The plaintiffs correctly point out that the defendants have asserted third parties' rights throughout their complaint. As mentioned in the preceding section, the defendants have alleged injuries "on behalf of" "hundreds of owner/operator drivers". Def. Ccl. at ¶ 12. They have provided an example of a hypothetical "instance" of "an independent owner/operator driver" who has been involved in an automobile accident and subsequently was denied coverage. *See* Def. Ccl. at ¶ 19. The defendants also have asserted generalized grievances against unidentified brokers, "which may or may not include any of the Counter-Defendants until further investigation is completed." Def. Ccl. at ¶ 21. Because the Supreme Court frowns upon such claims, the allegations regarding third parties and generalized grievances must be stricken from the complaint. Nevertheless, these allegations are not a proper basis for dismissal of the entire complaint. As noted above, by incorporating themselves by reference under the titles of "Counter-Plaintiffs" and "independent owner/operators", the defendants sufficiently have alleged individualized injuries to establish standing. Insofar as these allegations assert claims on behalf of the defendants themselves, those claims will remain against the plaintiffs.

## II. Antitrust Claims

Count VI of the counterclaim is for violation of the Sherman and Clayton Acts, 15 U.S.C. §§ 1-7, 12-26. The basis of this claim is the defendants' allegations that the plaintiffs entered into an illegal conspiracy to set minimum, uniform tariffs to establish a monopoly and to avoid competition with one another. *See* Def. Ccl. at ¶¶ 46-48. The defendants also contend that, as the leader of the plaintiffs, Support Trucking threatened to file the instant lawsuit against the defendants

when the defendants attempted to voice their economic situation. *See* Def. Ccl. at ¶ 49. The plaintiffs argue that these allegations are insufficient to state a claim for a violation of the antitrust laws.

The most glaring deficiency of the defendants' antitrust claim is its failure to clarify what conduct is alleged to be a violation of the antitrust laws and to specify what provisions allegedly have been violated. The defendants have brought their claims under the Sherman Act, 15 U.S.C. §§ 1-7, and the Clayton Act, 15 U.S.C. §§ 12-26, but it is not clear whether their claims are for attempted monopolization, price fixing, boycotting, conspiracy or attempted conspiracy to violate the antitrust laws, or some other violations. A determination by the court that the defendants' claim is under any one (or a combination) of these theories would require the court to embark upon a fishing expedition throughout the defendants' counterclaim in order to extract the theories of recovery and the elements of each theory.

From the face of the complaint, it is not clear that the facts of this case involve antitrust violations. The purpose of the antitrust laws is prohibit agreements that unreasonably restrain trade. *See Nynex Corp. v. Discon, Inc.*, 525 U.S. 128, 133, 119 S. Ct. 493, 497 (1998) (citations omitted). It does not appear that the plaintiffs' conduct constitutes an unreasonable restraint of trade because there is no allegation in the complaint that the defendants were prevented from trading elsewhere in the market. What is missing from the defendants' complaint is any allegation of an adverse effect on competition. *See Garshman v. Universal Res. Holding, Inc.*, 824 F.2d 223, 231 (3d Cir. 1987) (affirming district court's finding that plaintiff failed to state antitrust claim where plaintiff's

11

allegations suggested no adverse effect on competition). While the counterclaim states that the plaintiffs have uniformly set the tariff rate at ten percent of the gross payment, there are no allegations from which the court could conclude that this practice alone constitutes price fixing. The defendants have not alleged that these tariff rates have affected competition in the relevant market.[2] They have alleged only that the plaintiffs have "enriched themselves" at the expense of "hundreds of owners/operators drivers and their respective families for those 20 years" and that the defendants themselves continue to suffer irreparable harm. Def. Ccl. at ¶¶ 12, 51.

The defendants' response to the plaintiffs' motion to dismiss does not attempt to clarify under which theories of recovery they are proceeding. The defendants refer to price fixing, conspiracy, and retaliatory conduct. Even if the court were to determine that the facts of this case were appropriate for an antitrust claim, it is clear that the defendants have not sufficiently alleged a claim for price fixing in violation of the antitrust laws. To prove price fixing, the defendants must show that: (1) there was a combination or conspiracy between the plaintiffs to fix the price of commissions they paid to the defendants and (2) defendants were injured as a proximate result of the price fixing. *See Godix Equip. Export Corp. v. Caterpillar, Inc.*, 948 F. Supp. 1570, 1576 (S.D. Fla. 1996).

In order to prove the first element, the defendants must show there was an "agreement on the

---

[2] In fact, the relevant market is not even defined in the complaint. Although "the definition of the relevant market is essentially a factual question," *Aventura Cable Corp. v. Rifkin/Narragansett South Flaorida CATV*, 941 F. Supp. 1189, 1193 (S.D. Fla. 1996), dismissal of an attempted monopolization claim is proper under Federal Rule of Civil Procedure 12(b)(6) if the description of the relevant market is legally insufficient. *See Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997) (dismissing complaint where plaintiff failed to adequately describe relevant market).

12

price or price level to be charged." *Godix Equip. Export Corp.*, 948 F. Supp. at 1576 (citations omitted). The defendants cannot make this showing because they have not alleged any meetings between the plaintiffs, any communications between them, or any other means by which their alleged conspiracy came about. The defendants' counterclaim merely states in a conclusory fashion that the plaintiffs "conspired, collaborated and/or contracted with each other" to establish uniform tariffs. Def. Ccl. at ¶¶ 6, 47. Such vague allegations are insufficient to state a claim upon which relief can be granted. "Enough data must be pleaded so that each element of the alleged antitrust violation can be properly identified." *Aquatherm Ind., Inc. v. Florida Power & Light Co.*, 971 F. Supp. 1419, 1429 (M.D. Fla. 1997) (citations omitted) (finding that plaintiff's allegations of conspiracy were too vague where they did not identify conspirators with any particularity); *see also Gould v. Sacred Heart Hosp. of Pensacola*, 1998 WL 995313 *18, No. 86-4392-RV (N.D. Fla. June 29, 1998) (granting motion to dismiss antitrust claims where plaintiffs failed to sufficiently allege elements of claims). As the Third Circuit has held:

> A general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action. Although detail is unnecessary, the plaintiffs must plead the facts constituting the conspiracy, its object and accomplishment. The plaintiffs have pleaded none of these facts. Neither the date of the alleged conspiracy nor its attendant circumstances are set forth. Nor is it averred who made the statements, where, when, or to whom.

*Commonwealth of Pa. v. PepsiCo*, 836 F.2d 173, 182 (3d Cir. 1988) (cited with approval in *Aquatherm Ind., Inc.*, 971 F. Supp. at 1429); *see also Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 145 F.3d 1258, 1261 (11th Cir. 1998) (stating that antitrust conspiracy claims must be

13

supported by factual allegations); *Ben Sheftall Distrib. Co. v. Mirta de Perales, Inc.*, 791 F. Supp. 1575, 1580 (S.D. Ga. 1992) ("[T]he requisites of pleading this cause of action are not met by a mere allegation that there was a combination, contract and conspiracy which tended to prejudice the public interest and which was anticompetitive in nature. . . . To state a cause of action, the plaintiff must allege the facts constituting the conspiracy, its object and accomplishment."). In this case, the defendants not only have failed to specify the means by which the alleged conspiracy was accomplished. They also have failed to set forth the dates of the alleged conspiracy; who, besides Support Trucking, made any statements; and where the alleged conspiracy took place. As far as the defendants' allegations regarding "about 25 other brokers, not parties to this suit at this time," these allegations are insufficient to support the conspiracy claim because they do not identify the coconspirators with any particularity. Def. Ccl. at ¶ 5; *see Aquatherm Ind.*, 971 F. Supp. at 1430 (dismissing antitrust conspiracy claim where plaintiff did not name coconspirators).

The defendants' allegations also are insufficient to sustain a claim for boycotting. Group boycotts involve refusals to deal that are prompted by coercion. *See Gould*, 1998 WL 995313 *23. "Usually, a group of firms with market power threatens to boycott suppliers or customers in order to induce them not to do business with a competitor." *Id.* The facts alleged in support of the defendants' counterclaim do not satisfy this description of a boycotting claim. The only coercive conduct alleged by the defendants is the plaintiffs' threat to file their lawsuit to prevent the defendants from striking. Def. Ccl. at ¶ 49. Preventing the defendants from striking is not tantamount to boycotting the defendants. In fact, it appears that it was the defendants who boycotted

14

the plaintiffs by refusing to work for them, not the plaintiffs who boycotted the defendants by suing them so that they would return to work. As such, these allegations cannot support a claim for boycotting.

In sum, the allegations substantiating count VI do not give the plaintiffs fair notice of the defendants' claim. From the pleadings, it is not apparent under what theory the defendants are bringing their claim or what elements have been alleged in support of the claim. Additionally, the factual allegations in support of the antitrust violations are too vague and conclusory to satisfy the theory of notice pleading. *See Ben Sheftall Distrib. Co. v. Mirta de Perales, Inc.*, 791 F. Supp. 1575, 1578 (S.D. Fla. 1992) (outlining standard for motion to dismiss antitrust claim); *see also Commonwealth of Pa. v. Pepsico, Inc.*, 836 F.2d 173, 182 (3d Cir. 1988) ("It is simply not fair to the defendants, and it would be an onerous imposition on the judicial process, to permit litigation to go forward on the basis of such conclusory and speculative allegations."). Accordingly, count VI of the counterclaim is dismissed. The defendants have twenty days from the date of this order to file an amended complaint remedying the pleading deficiencies.[3]

### III.  Jurisdiction

In their counterclaim, the defendants assert that the court has subject matter jurisdiction over their claims "by virtue of the complaint itself." Def. Ccl. at ¶ 1. This statement is incorrect. This

---

[3] The plaintiffs also argue that the defendants have failed to properly plead their fraud-related state law claims as required by Federal Rule of Civil Procedure 9(b). A cursory review of the defendants' counterclaim reveals that the defendants have not pled the circumstances of the alleged fraud with sufficient particularity. *See Medalie v. F.S.C. Sec. Corp.*, 87 F. Supp.2d 1295, 1306 (S.D. Fla. 2000) (outlining allegations required by Federal Rule of Civil Procedure 9(b)). The defendants amended complaint also should remedy these deficiencies.

15

court can exercise its supplemental jurisdiction only if the claims in question are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367. The plaintiffs' original complaint seeks to enjoin the defendants from a work stoppage, but the defendants' counterclaim asserts unrelated claims for insurance fraud and antitrust violations. Because the counterclaim is not based on the same occurrence that is alleged to form the basis of the plaintiffs' claim, there must be an independent source of subject matter jurisdiction for the counterclaim.

There is no question that diversity jurisdiction pursuant to 28 U.S.C. § 1332 does not exist in this case because the plaintiffs and defendants are from Florida. The only other possible basis for subject matter jurisdiction is federal question under 28 U.S.C. § 1331. The only count based on federal law is count VI, the defendants' antitrust allegations, but, as discussed in the preceding section, this count has been dismissed. The remaining eleven counts are state law causes of action. If the defendants cannot correct their pleading deficiencies under count VI in accordance with the court's order, the court will be compelled to dismiss the counterclaim for lack of subject matter jurisdiction.

It is therefore:

**ORDERED AND ADJUDGED THAT:**

The plaintiffs' motion to dismiss (DE #122) is GRANTED WITHOUT PREJUDICE. The defendants have twenty days from the date of this order to file an amended complaint. Failure to remedy the pleading deficiencies in count VI will result in a dismissal of the entire

counterclaim.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21 day of March, 2001.

                                      **THE HONORABLE ALAN S. GOLD**
                                      **UNITED STATES DISTRICT JUDGE**

cc:

Magistrate Judge Simonton
Charles S. Caulkins, Esq.
James C. Polkinghorn, Esq.
Edward H. Trent, Esq.
Richard J. Diaz, Esq.