UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NUMBER 00-6223-Civ-Gold/Simonton

AUSTIN TUPLER TRUCKING, INC.
et al.

    Plaintiff,

v.

SUPPORT TRUCKING GROUP,
et al.,

    Defendants.

_____/



## DEFENDANTS, JOHN DOE ASSOCIATION A/K/A THE COMMISSION, N/K/A SUPPORT DUMP TRUCKING GROUP, INC., JUAN ARAGONES, OSCAR DE LEON, RAFAEL D. JIMENEZ, ALAYN HERNANDEZ, RENIER MARTINEZ, AND JOHN DOES NUMBER 1 - 900'S AMENDED COUNTERCLAIM TO COMPLAINT FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

COME NOW, Defendants, John Doe Association, a/k/a The Commission n/k/a Support Dump Trucking Group, Inc. ("SDTG"), Juan Aragones, Oscar de Leon, Rafael D. Jimenez, Alayn Hernandez, Renier Martinez, ("Group 1 Defendants") and John Does Number 1-900[1] and file their Plaintiff's Amended Counterclaim to Plaintiffs' Complaint for Injunctive Relief and Demand for Jury Trial as follows:

NON-COMPLIANCE OF S.D. fla. L.R. *5 1.15*

1

## AMENDED COUNTERCLAIM

Group 1 Defendants (not including SDTG) file their counterclaim against

Counter-Defendants, Austin Tupler Trucking, Inc. ("CD Tupler"), Juner Hauling

Corporation, Retranca Equipment & Trucking Corp., Truck Brokerage by

National, Inc. and Eastman Aggregates, ("Counter-Defendants") and state:

1.      Jurisdiction of the subject matter and over all Counter-Defendants

exists by virtue of the complaint itself.

2.      The Counter-Plaintiffs (Group 1 Defendants, not including SDTG)

are independent owner/operator dump truck drivers.

### Background Facts

3.      Since the early 1980's, CD Tupler has positioned itself as a leading,

manipulating, controlling and powerful force in the construction and

construction materials hauling industry as a broker, essentially contracting

through the bidding process with public and/or private entities for construction

jobs to provide hauling of construction supplies and/or aggregate materials such

as rock and sand.

4.      The remaining Counter-Defendants and other brokers were also

engaged in the same type of hauling business as CD Tupler but on a smaller

scale.

---

[1] We anticipate that once a full identification of the John Does is established, they will be
formally named and served as parties to this action.

5.      The remaining Counter-Defendants and about 25 other brokers, not
parties to this suit at this time, ("the other brokers"), are engaged in the same
type of business as CD Tupler but on a smaller scale.

6.      All Counter-Defendants and other brokers, but particularly CD
Tupler, have, over the last several years, controlled and set amongst themselves,
on a unilateral basis, a tariff or rate sheet setting a "fixed price" for payment to
independent owner/operator drivers they hire per haul, which includes several
of the Counter-Plaintiffs.  The Counter-Defendants have all carefully followed
this "secret" tariff or rate sheet in a "hush-hush" manner.

7.      This tariff was not negotiated between individual independent
owner/operator drivers and a respective broker.  The tariff was forced, fixed and
imposed by the Counter-Defendants.  The tariff but governs the amount of
money a broker (including all of the Counter-Defendants) would offer any
independent owner/operator driver to haul on a per job basis for the respective
Counter-Defendant.

8.      By more than mere coincidence, all Counter-Defendants have
operated under the same tariff for years, and if there has been any deviation, it
has been so negligible that it still constitutes uniformity in pricing.

9.      By way of example but not by limitation, CD Tupler in late 1999,
obtained a contract with the County of West Palm Beach for airport construction.
Because CD Tupler could not handle all of the hauling, it subcontracted out some
of the hauling work to many independent owner/operators but each

owner/operator had to work at the identical rate of pay, set unilaterally by CD Tupler.   This is price fixing.

10.    In 1999, when allegations first arose regarding price fixing in the industry by the brokers, including CD Tupler, CD Tupler, in an effort to disguise its own price fixing practices, ever so slightly deviated from the price fixing which it had engaged in for almost the last 20 years.  Up until then, most, if not all, brokers charged a flat rate 10 percent fee against the gross payment to the independent owner/operator driver as a charge-back, commission or brokerage fee for giving the independent owner/operator the work.  CD Tupler increased its ten percent (10%) rate to an eleven percent (11%) rate simply so it could not be accused of price fixing even though it had engaged in price fixing for several years before then.   Nevertheless, the tariff is still the same as between CP Tupler, the remaining Counter-Defendants, other brokers in the industry and the independent owner/operator drivers.

11.    CD Tupler, as the leading broker in the industry has put tremendous pressure and influence on the remaining Counter-Defendants and the other brokers in order to control and monopolize the industry.  As a de facto leader, CD Tupler has controlled market prices because it has systematically engaged in the bidding process, always assuming that the independent owner/operators would later work in perpetuity for the rates set and enforced by CD Tupler for almost 20 years now.

12.    Once the Counter-Defendants receive a contract, the respective broker then offers the hauling to the owner/operators on a "take it or leave it" basis. Because of their strong-arm position and control in the marketplace, the independent owner/operators have had no choice for years but to reluctantly yield to accepting unacceptably low fixed rates set by the brokers which have not even accounted for regular inflation over the last 20 years, while the Counter-Defendants have enriched themselves at the expense of these hundreds of owner/operators drivers and their respective families for those 20 years.

### Insurance Scam

13.    In addition to the foregoing, the Counter-Defendants and the other brokers, have engaged in conduct which constitutes fraud, extortion, civil theft, conversion, violation of the Florida RICO Statutes, RICO conspiracy, violation of Florida insurance laws, which has had the effect of inflicting emotional distress upon all of the Group 1 Defendants in their dealings with the Counter-Plaintiffs.

14.    In order to understand the insurance scam perpetrated by the Counter-Defendants and other brokers, some background information is required.

15.    An independent owner/operator driver, under Florida law, is responsible to obtain minimum automobile insurance coverages which includes personal injury protection, property damage liability and bodily injury liability.

16.    What the Counter-Defendants and several other brokers have done for years is charge a standard ten percent (10%) retainage off of the gross

5

payment per haul "for insurance purposes" from the payment to the independent owner/operator drivers. There is however, no relation between this percentage and the actual cost of insurance to the Counter-Defendants or the other brokers. Indeed, an average independent owner/operator drivers earns a gross sum of approximately $70,000.00 per year from his/her broker. Thus, such independent owner/operator driver would have $7,000.00 deducted by the broker "for insurance purposes". However, the actual cost of the insurance is half, or less than half of that price. Nevertheless, the Counter-Defendants and other brokers have "pocketed" the excess monies which are nothing more than ill-gotten gains through the exercise of pressure, theft, fraud and extortion upon the independent owner/operator driver with a "take it or leave it attitude".

17.    What the Counter-Defendants and several other brokers have also done for years is they buy a corporate blanket bulk automobile insurance policy for their own benefit wherein they are the only named insured. In other words, the independent owner/operator drivers are not even the beneficiaries under these insurance contracts which they pay for their benefit.

18.    Next, in order to create an impression that the independent owner/operator drivers are covered by the brokers for automobile insurance, some if not all of the Counter-Defendants and the other brokers, have provided a illusory document titled "Florida Automobile Insurance Card" to the owner/operator drivers. Exhibit "A" attached to this counterclaim is a sample copy of one such document issued by CP Tupler.

6

19.    However, this "proof of insurance" is a sham within the insurance scam itself. First, the insurance does not insure the independent owner/operator driver, it insures the broker. The independent owner/operator drivers are independent contractors. This creates a second problem. There have been instances where an independent owner/operator driver has been involved in an automobile accident while hauling for a particular broker. When that independent owner/operator driver was sued, the respective broker, defended has taken the position that it is not liable because it was not the "employer" of the owner/operator driver of the job but rather, the relation was one of an independent contractor. This creates an inherent conflict of interest in addition to other coverage issues for the intended (but not actual) beneficiary of the insurance coverage and leaves the independent owner/operator driver "holding the bag".

20.    In other words, not only has there never been a legal need for this "forced-placed insurance" and not only have the independent owner/operators never been named insureds under these policies, but when time came to defend an auto liability claim, many independent owner/operator drivers had no benefit of legal representation for the money they had paid for insurance coverage.

21.    Investigation has revealed that some brokers (which may or may not include any of the Counter-Defendants until further investigation is completed), have represented to their insurance agent and insurance company

that they had a specific amount of owner/operator truckers working for them under the policy "insured" when in truth and in fact, a far greater number was actually working for that broker. This has obviously been done in an attempt to secure yet a cheaper umbrella-type or group policy while "hoping" that the "uninsured independent owner/operator drivers" would never have a claim made against them.

## COUNT I – FRAUD
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

22.    All Counter-Defendants have made representations to the Counter-Plaintiffs that they were fully insured, that they were paying dollar for dollar the actual cost of automobile insurance to the broker, and that each independent owner/operator driver was a named insured and beneficiary under the covering policy.

23.    At the time these representations were made, they were knowingly made false in fact.

24.    Each independent owner/operator driver (Counter-Plaintiff-not including SDTG) reasonably and traditionally has relied on these representations (now to their detriment), in order to work for the Counter-Defendants and in feeling comfortable that they had automobile liability insurance and were paying the fair and actual cost of such insurance as if they had purchased it themselves, each with an individual policy.

25.     Each independent owner/operator driver (Counter-Plaintiff-not including SDTG) working for a broker has been induced to believe that he is insurance-covered  and required to permit a ten percent (10%) deduction off of the "per-haul payment" for "insurance coverage" created by the false representations of the Counter-Defendants.   And  to the extent any Counter Defendant claims that it was "financing" the insurance – that would constitute usury and unlawful brokering of insurance.

26.     As a direct, proximate and legal result of these false representations, the independent owner/operator drivers (Counter-Plaintiff –not including SDTG) have been damaged.  They have overpaid for many years, the cost of insurance.  In many instances, they have not been covered by insurance and/or represented by an insurance company when a claim was made against them, resulting in other losses.

WHEREFORE, Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants for their damages plus costs and interest. Upon a future showing of willful, wanton, outrageous and malicious intent and conduct, Counter-Plaintiffs will make application for a multi-million dollar punitive damages award in accordance with F.S. §768.72 and in compliance with the evidentiary/proffer requirements of that statute.

## COUNT II- NEGLIGENT MISREPRESENTATION
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

27.     All Counter-Defendants have made representations to their independent owner/operator drivers (Counter-Plaintiffs not including SDTG) that they were fully insured, that they were paying dollar for dollar the actual cost of automobile insurance to the broker, and that each independent owner/operator driver (Counter-Plaintiffs not including SDTG) was a named insured and beneficiary under the covering policy.

28.     At the time these representations were made by the Counter-Plaintiffs, they were made with reckless indifference for their truth.

29.     Each independent owner/operator driver (Counter-Plaintiffs not including SDTG) reasonably relied on these representations to their detriment to work for the Counter-Defendants and in feeling comfortable that they had automobile liability insurance and were paying the cost of such insurance as if they had purchased it themselves, each with an individual policy.

30.     Each independent owner/operator driver (Counter-Plaintiffs not including SDTG) working for a broker has been induced to believe that he is insurance-covered and required to permit a ten percent (10%) deduction off of the "per haul payment" for "insurance coverage" created by the false representations of the Counter-Defendants.   And, to the extent any Counter-Defendant claims that it was "financing" the insurance – that would constitute usury and unlawful brokering of insurance.

31.     All Counter-Defendants had a duty to the Counter-Plaintiffs to act in good faith, not to steal from them, to accurately charge them for the actual cost

of the automobile liability insurance and to make sure that each such independently owner/operator driver (Counter-Plaintiffs not including SDTG) was actually insured.

32.    Counter-Defendants breached that duty by their actions as described in Paragraphs 13-21.

33.    As a direct, proximate and legal result of these negligently false representations, the independent owner/operator drivers (Counter-Plaintiffs not including SDTG) have been damaged. They have overpaid for many years the cost of insurance. In many instances, they have not been covered by insurance and/or represented by an insurance company when a claim was made against them, resulting in other losses.

WHEREFORE, Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants for their damages plus costs and interest.

## COUNT III – CIVIL THEFT
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

34.    This is a count for civil theft pursuant to violation of F.S. §§812.012-812.037

35.    All Counter-Defendants have made representations to their independent owner/operator drivers (Counter-Plaintiffs not including SDTG) that they were fully insured, that they were paying dollar for dollar the actual

11

cost of automobile insurance to the broker, and that each independent owner/operator driver (Counter-Plaintiffs not including SDTG), was a named insured and beneficiary under the policy.

36.     Each independent owner/operator driver (Counter-Plaintiffs not including SDTG) has been induced to work for the brokers and forced to permit a ten percent (10%) deduction off of the "per-haul payment" under the false impression created by the false representations of the Counter-Defendants.

37.     As a direct, proximate and legal result of these false representations, the independent owner/operator drivers (Counter-Plaintiffs not including SDTG) have been damaged.  They have overpaid for many years the cost of insurance.  In many instances, they have not been covered by insurance and/or represented by an insurance company when a claim was made against them, resulting in other losses.

38.     Counter-Defendants have misappropriated with the intent to permanently deprive the Counter-Plaintiffs of monies belonging to the Counter-Plaintiffs (not including SDTG) from thousands, if not millions of dollars of insurance charges overages for many years.

WHEREFORE, Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants for their damages plus costs and interest, and attorney's fees pursuant to F.S. §772.11.

## COUNT IV – CONVERSION
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

39.    All Counter-Defendants have made representations to the independent owner/operator drivers that they were fully insured, that they were paying dollar for dollar the actual cost of automobile insurance to the broker, and that each independent owner/operator driver was a named insured and beneficiary under the policy.

40.    Each independent owner/operator driver (Counter-Plaintiffs not including SDTG) has been induced to work for the brokers, permit a ten percent (10%) deduction off of the "per-haul payment" under the false impression created by the false representations of the Counter-Defendants.

41.    As a direct, proximate and legal result of these false representations, the independent owner/operator drivers (Counter-Plaintiffs not including SDTG) have been damaged. They have overpaid for many years, the cost of insurance, in many instances, they have not been covered by insurance and/or represented by an insurance company when a claim was made against them, resulting in other losses.

42.    Counter-Defendants have misappropriated with the intent to permanently deprive the Counter-Plaintiffs of monies belonging to the Counter-Plaintiffs (not including SDTG) from thousands, if not millions of dollars of insurance charges overages for almost twenty years.

WHEREFORE, Counter-Plaintiffs (not including SDTG) demand judgment for their damages against the Counter-Defendants, plus costs and interest.

## COUNT V – INSURANCE FRAUD
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

43.     Florida Statutes prohibits any person from charging an insurance premium if such person is not a licensed insurance agent or company.

44.     Counter-Defendants have all charged insurance premiums to the Counter-Plaintiffs (not including SDTG) and in addition, have charged an excess premium over their actual cost for such insurance, constituting an even more aggravated form of insurance fraud.

45.     None of the Counter-Defendants during the period of time of such charges were licensed to sell insurance within the state of Florida.  As such, their actions were unlawful.

WHEREFORE, Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants for their damages plus costs, interest and attorney's fees, pursuant to the Florida Insurance Statute.

## COUNT VI- VIOLATION OF SHERMAN ANTI-TRUST ACT AND THE
## CLAYTON ACT AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

46.     Counter-Defendants are independent brokers and but for their illegal conspiracy would be in competition with one another.

47.    Counter-Defendants have conspired, collaborated and/or contracted with each other to set minimum tariffs to be paid by them to the Counter-Plaintiffs (not including SDTG) for jobs completed.  Strong circumstantial evidence of this is the fact that for the past ten or more years,  each broker has always paid the same tariff as every other broker in the industry.  This is more than mere coincidence.   For example, the Counter-Plaintiffs have gone to several of the Counter-Defendants seeking work before the counterclaim was filed and have learned that each broker knows what every other broker pays and in order to keep this consistency and eliminate competition, the prices which the brokers paid are not only fixed now but have been for years and years.  This price fixing has affected competition in the relevant market because it does not allow brokers themselves to compete amongst each other and provides no ability whatsoever for the independent owner/operator/drivers to offer their services to competing brokers because there is no competition between the brokers – only a tacit denial by the brokers of same.

48.    Counter-Defendants have conspired, collaborated and/or contracted with each other to boycott Counter-Plaintiffs for the purpose of effectuating their plan to set prices and affect commerce.   This boycott is in the form of dealing with the Counter-Plaintiffs and all of the independent owner operater drivers  on a take it or leave it basis.  By doing so, there is no competition amongst the brokers which allows for free enterprise by and between any independent owner operator driver and any single broker.

15

Counter-Defendants' actions are in violation of the Sherman Act, 15 U.S.C. §§1-7,
and the Clayton Act, 15 U.S.C. §§12-26.

49.     When the independent owner/operator drivers (Counter-Plaintiffs
not including SDTG) have attempted to voice their economic situation with the
brokers in an effort to resolve the problem without engaging in price fixing or a
monopoly, CP Tupler, as their leader, has threatened to file the instant lawsuit
against the Defendant which, itself, is a violation of the Sherman Act and the
Clayton Act.    It also constitutes an act of intimidation, oppression and extortion.

50.     Counter-Defendants have also attempted to establish a monopoly
in violation of the Federal Anti-Trust Laws.  This monopoly consists of the
unofficial forming of an agreement and understanding by and between the
brokers to set fixed prices among them so that there can be no competition
between them, which places the Counter-Plaintiffs and any independent owner/
operator/driver in a no bargaining position.   The price fixing, boycotting, and
monopoly activities unreasonably restrain trade since they limit free negotiation
and free enterprise by and between the Counter-Defendants and the
independent owner/operator/drivers.

51.     Counter-Plaintiffs (not including SDTG) have suffered and
continue to suffer irreparable harm as a result of Counter-Defendants' illegal
conduct.

WHEREFORE, Counter-Plaintiffs (not including SDTG) demand
judgment against the Counter-Defendants plus treble damages, costs and

attorney's fees ,as well as permanent injunctive relief, ordering Counter-Defendants to immediately and permanently cease all conduct in violation of the Sherman and Clayton Act.  See 15 U.S.C. §§15, 26.

### COUNT VII- VIOLATION OF FLORIDA ANTI-TRUST ACT OF 1980 AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

52.    Counter-Defendants are independent brokers and but for their illegal conspiracy would be in competition with one another.

53.    Counter-Defendants have conspired, collaborated and/or contracted with each other to set minimum tariffs to be paid by them to the Counter-Plaintiffs for jobs completed.

54.    Counter-Defendants have conspired, collaborated and/or contracted with each other to boycott Counter-Plaintiffs for the purpose of effecting their plan to set prices and affect commerce.  Counter-Defendants' actions are in violation of the Sherman Act, 15  U.S.C. §§1-7, and the Clayton Act, 15 U.S.C. §§12-26.

55.    When the owner/operator drivers have attempted to voice their economic situation with the brokers in an effort to resolve the problem without engaging in price fixing or a monopoly, CP Tupler, as their leader, has threatened to file the instant lawsuit against the Defendant which, itself, is a violation of the Sherman Act and the Clayton Act.   It also constitutes an act of intimidation, oppression and extortion.

56.    Counter-Defendants have also attempted to establish a monopoly in violation of the Federal Anti-Trust Laws.

57.    Counter-Plaintiffs (not including SDTG) have suffered and continue to suffer irreparable harm as a result of Counter-Defendants' illegal conduct.

58.    Counter-Defendants' actions are in violation of the Florida Anti-Trust Act of 1980, Florida Statute §§542.15 – 542.36.

59.    Counter-Defendants' purpose is to curtail competition by illegal setting prices and functionally boycotting the owner/operator drivers.

WHEREFORE, Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants plus treble damages, costs and attorney's fees, as well as permanent injunctive relief, ordering Counter-Defendants to immediately and permanently cease all conduct in violation of the Florida Anti-Trust Act of 1980.

## COUNT VIII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

60.    Counter-Defendants' conduct, as stated in the foregoing paragraphs was intentional or reckless.  The Counter-Defendants intended their behavior when they knew or should have known that emotional distress would likely result.

61.    The Counter-Defendants' conduct was outrageous and exceeded all bounds of decency and can only be regarded as odious and utterly intolerable in a civilized community.

62.    The Counter-Defendants' conduct in fact caused emotional distress to a severe nature and degree.

WHEREFORE, the Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants for their damages plus costs and interest.

## COUNT IX - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

63.    Counter-Defendants' conduct, as stated in the foregoing paragraphs was intentional or reckless. The Counter-Defendants intended their behavior when they knew or should have known that emotional distress would likely result.

64.    The Counter-Defendants' conduct was outrageous and exceeded all bounds of decency and can only be regarded as odious and utterly intolerable in a civilized community.

65.    The Counter-Defendants' conduct has had an impact on the Counter-Plaintiffs (not including SDTG).

66.    The Counter-Defendants' conduct in fact caused emotional distress to a severe nature and degree.

WHEREFORE, the Counter-Plaintiffs (not including SDTG) demand judgment for their damages against the Counter-Defendants plus costs and interest.

## COUNT X – EXTORTION
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

67.     The Counter-Defendant have engaged over the years in a conduct which constitutes extortion.

68.     The Counter-Defendants have placed "take it or leave it" demands upon the Counter-Plaintiffs, including but not limited to offering to pay ridiculously low rates which have not increased for almost over twenty years.

69.     By way of example but not by limitation, CD Tupler and other brokers have given preferential treatment to the independent owner/operator drivers who purchased insurance through the brokers over the independent owner/operator drivers who had their own insurance.  CD Tupler has engaged in a practice of placing independent owner/operator drivers with their own insurance "at the end of the line".  This has had the effect of giving preferential jobs and more jobs to those independent owner/operator drivers who have allowed CD Tupler and other brokers to enrich themselves through the insurance scam.  The effect is to intimidate these independent owner/operator drivers to "buy insurance" through CD Tupler so CD Tupler can "rip them off".

70. The Counter-Plaintiffs (not including SDTG) have had no choice but to succumb to the hard fisted techniques of the Counter-Defendants but more particularly, CD Tupler, or, find themselves without work.

71. As another example of this extortion, many brokers have unilaterally instituted a "program" over the years whereby they demand the independent owner/operator drivers to pay an auto insurance deductible up front so that in the event of a claim, the deductible is covered. And, should a claim be made, an immediate additional deductible payment is demanded by the broker. For years, these brokers have been playing with this money and not providing the independent owner/operator drivers (Counter-Plaintiffs not including SDTG) with interest on this money.

72. As a direct, proximate and legal result of this extortion, Counter-Plaintiffs (not including SDTG) have been damaged.

WHEREFORE, the Counter-Plaintiffs (not including SDTG) demand judgment for their damages against the Counter-Defendants plus costs and interest.

## COUNT XI- RICO CONSPIRACY
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

73. This is a conspiracy claim pursuant to the Florida RICO statute, also known as the Civil Remedies for Criminal Practices Act under F.S. §772.101

74.    The Counter-Defendants have conspired to violate F.S. 772.101 by their conduct as described in Counts I – Fraud, III-Civil Theft, V– Insurance Fraud, Count VI-Violation of the Sherman and Clayton Acts, Count VII – violation of the Florida Anti-Trust Act of 1980, X-Extortion and Count XII-Substantive Rico.

75.    The conduct contained in these particular counts is criminal activity as defined in F.S. §772.102. Fraud is a violation of F.S. §817. Theft is a violation of F.S. §812. The insurance fraud count is a violation of F.S. §817 and the extortion count is a violation of F.S. §836.05. RICO is a violation of F.S. §772.101.

76.    The Counter-Defendants have formulated an enterprise as defined by F.S. §772.102(3) which, for purposes of this litigation, we will call "The Broker Enterprise".

77.    The Broker Enterprise has engaged in a pattern of criminal activity engaging in at least two incidents of criminal activity which have had the same or similar intents, results, accomplices, victims or methods of commission which are not isolated incidents as described in the foregoing paragraphs. The last of these incidents has occurred within five years of all prior complained of incidents of criminal activity as described by F.S. §772.102(4).

78.    The Broker Enterprise has received proceeds derived directly or indirectly from this pattern of criminal activity or through the collection of an unlawful debt. Such conduct constitutes a violation of F.S. §772.103(3) and (4).

79.    The Counter-Defendants have conspired and/or confederated with each other to control and regulate prices in the industry as well as to control the owner/operator drivers through intimidation, "muscle flexing", threats, extortion, theft, and fraud as described in all of the aforementioned paragraphs.

80.    This conspiracy has had the effect of damaging the Counter-Plaintiffs (not including SDTG) in several ways.  The Counter-Plaintiffs (not including SDTG) have not been able to earn themselves a marginally decent living for themselves or their families.   They have had their hardworking dollars stolen by multi-million dollar corporate giants, the Counter-Defendants for almost twenty years now.  They have been forced out of work because at the end of the day they were left with no profit.  They have been treated with a "take it or leave it" attitude and because of their lack of skill, training or education, have had no choice but to "take it".   The Counter-Plaintiffs have also suffered psychological injury, oppression, and embarrassment as a result of the Counter-Defendants' conduct.

WHEREFORE, the Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants for their damages plus costs and interest.  In addition, Counter-Plaintiffs (not including SDTG) seek treble damages and attorney's fees pursuant to F.S. §772.104.

## COUNT XII- SUBSTANTIVE RICO
## AGAINST ALL COUNTER-DEFENDANTS

All prior paragraphs are realleged.

23

81.    This is an action pursuant to the substantive RICO statute, also known as the Civil Remedies for Criminal Practices Act under F.S. §772.101

82.    The Counter-Defendants have conspired to violate F.S. 772.101 by their conduct as described in Counts I – Fraud, III-Civil Theft, V– Insurance Fraud, VI-Sherman and Clayton Act, VII-Florida Anti Trust Act of 1980 X- Extortion and XI- Rico Conspiracy.

83.    The conduct contained in these particular counts are criminal activity as defined in F.S. §772.102.  Fraud is a violation of F.S. §817.  Theft is a violation of F.S. §812.  The insurance fraud count is a violation of F.S. §817 and the extortion count is a violation of F.S. §836.05.  RICO conspiracy is a violation of F.S. §772.101.

84.    The Counter-Defendants have formulated an enterprise, as defined by F.S. §772.102(3), which, for purposes of this litigation, we will call "The Broker Enterprise".

85.    The Broker Enterprise has engaged in a pattern of criminal activity engaging in at least two incidents of criminal activity which have had the same or similar intents, results, accomplices, victims or methods of commission which are not isolated incidents as described in the foregoing paragraphs.  The last of these incidents has occurred within five years of all prior complained of incidents of criminal activity as described by F.S. §772.102(4).

86.    The Broker Enterprise has received proceeds derived directly or indirectly from this pattern of criminal activity or through the collection of an unlawful debt. Such conduct constitutes a violation of F.S. §772.103(3) and (4).

87.    The Counter-Defendants have engaged in fraud, civil theft, extortion, price fixing in order to control the owner/operator drivers and the market as described in Counts I, III, V, VI, VII, X and XI of this Counterclaim

88.    This conspiracy has had the effect of damaging the Counter-Plaintiffs in several ways. The Counter-Plaintiffs (not including SDTG) have not been able to earn themselves a marginally decent living for themselves or their families. They have had their hardworking dollars stolen by multi-million dollar corporate giants, the Counter-Defendants for almost twenty years now. They have been forced out of work because at the end of the day they were left with no profit. They have been treated with a "take it or leave it" attitude and because of their lack of skill, training or education, have had no choice but to "take it". The Counter-Plaintiffs (not including SDTG) have also suffered psychological injury, oppression, and embarrassment as a result of the Counter-Defendants' conduct.

WHEREFORE, the Counter-Plaintiffs (not including SDTG) demand judgment against the Counter-Defendants for their damages plus costs and interest. In addition, Counter-Plaintiffs (not including SDTG) seek treble damages and attorney's fees pursuant to F.S. §772.104.

## DEMAND FOR JURY TRIAL

Counter-Plaintiffs demand jury trial on all issues so triable

Respectfully submitted,

Richard J. Diaz
F.B.N. 0767697
2701 S.W. 3rd Avenue
Miami, FL 33129
Telephone: (305) 285-1122
Facsimile: (305) 285-0354
e-mail: rick@rjdpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was

mailed this 30th day of April, 2001 to Ed Trent, Esq., Fisher & Phillips LLP, 2300

NationsBank Tower, One Financial Plaza, Ft. Lauderdale, FL 33394 and Hosey

Hernandez, Esq., 2701 S. Bayshore Drive, Suite 602, Coconut Grove, FL 33133.

Richard J. Diaz, Esq.

mswd\sdtg\ans-aff-d-cc\mvg\4768

26