UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6223-CIV-GOLD/SIMONTON



AUSTIN TUPLER TRUCKING, INC., et. al,

Plaintiffs/Counter-Defendants,

vs.

SUPPORT DUMP TRUCKING GROUP,
INC., et. al,

Defendants/Counter-Plaintiffs.
_____/

### ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM

**THIS CAUSE** is before the court upon the motion to dismiss (DE #153) filed by the plaintiffs, Austin Tupler Trucking, Inc., et al. (collectively "the plaintiffs"). The plaintiffs filed a three-count amended complaint against Support Dump Trucking Group, Inc., et al. alleging: count I, violation of the Sherman Antitrust Act and the Clayton Act, 15 U.S.C. §§ 1-7, 12-26; count II, violation of the Florida Antitrust Act of 1980, Fla. Stat. §§ 542.15-542.36; and count III, intentional interference with business relationships. Some of the defendants (John Doe Association, a/k/a The Commission n/k/a Support Dump Trucking Group, Inc. ("Support Dump Trucking"), Juan Aragones, Oscar de Leon, Rafael Jimenez, Alayn Hernandez, Renier Martinez, and John Does Number 1-900 (collectively "the defendants")) filed an amended counterclaim against the plaintiffs alleging: count I, fraud; count II, negligent misrepresentation; count III, civil theft; count IV, conversion; count V, insurance fraud; count VI, violation of the Sherman Antitrust Act and the Clayton Act, 15 U.S.C. §§ 1-7, 12-26; count VII, violation of the Florida Antitrust Act of 1980, Fla. Stat. §§ 542.15-542-36; count VIII, intentional infliction of emotional distress; count IX, negligent infliction of emotional

distress; count X, extortion; count XI, conspiracy pursuant to the Civil Remedies for Criminal Practices Act (Florida RICO statute), Fla. Stat. § 772.101; and count XII, violation of the Civil Remedies for Criminal Practices Act (Florida RICO statute), Fla. Stat. § 772.101. It is this amended counterclaim that the plaintiffs seek to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, the plaintiffs' motion is granted with prejudice.

## Procedural History and Factual Background

### I.   The Parties

The plaintiffs in this case are Florida corporations engaged in the truck brokerage business. (Pl. Am. Compl. at ¶ 7; Def.'s Ccl. at ¶ 3). They contract with independent truck owner-operators, who haul construction materials, such as sand or lime rock. (Pl. Am. Compl. at ¶ 7; Def.'s Ccl. at ¶ 3). The defendants are independent truck owner-operators who contract with the plaintiffs to haul various materials based on contracts entered into by the plaintiffs with third parties. (Pl. Am. Compl. at ¶ 10; Def.'s Ccl. at ¶ 3).

### II.   The Plaintiffs' Complaint

On February 2, 2000, the defendants initiated a work stoppage for all independent truck owner-operators in South Florida. (Pl. Am. Compl. at ¶ 17). On February 15, 2000, the plaintiffs filed their initial complaint, which primarily alleged antitrust violations. According to the plaintiffs, the defendants engaged in the work stoppage threatened, harassed, and assaulted the plaintiffs' customers and suppliers. (Pl. Am. Compl. at ¶¶ 24,25). The plaintiffs claimed that the defendants attempted to form a monopoly by collectively soliciting a single broker to agree to their demands in exchange for the defendants' promise not to do business with any other brokers, including the plaintiffs. (Pl. Am. Compl. at ¶ 27).

### III. The Defendants' Counterclaim

On June 2, 2000, defendants Juan Aragones, Oscar de Leon, Rafael Jimenez, Alayn Hernandez, and Renier Martinez filed a counterclaim against the plaintiffs.[1] Their twelve-count complaint is based upon two theories of recovery: price fixing and fraudulent insurance practices. According to the defendants, the plaintiffs and approximately twenty-five other unnamed brokers have set and followed a "secret" tariff rate sheet setting a fixed price for payment to the independent owner-operators with whom they contract. (Def.'s Ccl. at ¶ 6). This tariff was imposed by the plaintiffs and never was negotiated between the plaintiffs and defendants. (Def.'s Ccl. at ¶ 7). The defendants claim that the plaintiffs' practice constitutes uniformity in pricing because the plaintiffs have operated under the same tariff for years, and any deviation in prices has been negligible. (Def.'s Ccl. at ¶¶ 8, 10). According to the defendants, the plaintiffs' "strong-arm" position in the marketplace has left them with no choice but to reluctantly yield to the low fixed hauling rates set by the plaintiffs. (Def.'s Ccl. at ¶ 12).

The defendants also claim that the plaintiffs have engaged in a fraudulent automobile insurance scheme. The plaintiffs charged the independent owner-operators a standard ten percent retainage off of the gross payment per haul for insurance purposes, but the actual price of the insurance purchased by the plaintiffs was one-half or less than one-half of the ten percent price. (Def.'s Ccl. at ¶ 16). The plaintiffs allegedly would retain the excess insurance funds and name themselves as the policies' beneficiaries, rather than the defendants, in whose names the policies should have been purchased. (Def.'s Ccl. at ¶ 16). Alternatively, in an attempt to secure a less

---

[1] It is not clear from the face of the countercomplaint whether John Does 1-900 have joined in the counterclaim, but the countercomplaint excludes that Support Trucking as a counter-plaintiff. (Def. Ccl. at 4).

3

expensive group policy, some brokers would represent to their insurance agents that they had less independent owner-operators working for them than they actually did. (Def.'s Ccl. at ¶ 21). In order to create the impression that the defendants were covered by the brokers for automobile insurance, the plaintiffs provided an "illusory document" titled "Florida Automobile Insurance Card." (Def.'s Ccl. at ¶ 18). Because the plaintiffs never actually purchased valid insurance, when any one of the defendants became involved in an automobile accident while working for the plaintiffs, he or she was denied the benefit of legal representation for the money that was paid for insurance coverage. (Def.'s Ccl. at ¶ 20). In sum, the plaintiffs falsely represented to the defendants that they were fully insured, were paying dollar for dollar the actual cost of automobile insurance, and that each independent owner-operator was a named insured and beneficiary under a policy. (Def.'s Ccl. at ¶ 22).

## IV. Procedural History

In September of 2000, the court granted the plaintiffs a consent permanent injunction against the following defendants: Osmely Jimenez, Alayn Hernandez, and Reynaldo Rodriguez. It is undisputed that the work stoppage that was the subject of the plaintiff's initial and amended complaints has ceased.

On January 26, 2001, the court held a status conference in order to determine whether this case would require further supervision. Because the plaintiffs indicated that the court should rule on the merits of their motion to dismiss the initial counterclaim of the remaining defendants, and the defendants indicated that they would continue to prosecute their counterclaim, the court issued an order on the plaintiffs' motion to dismiss on March 21, 2001. The order granted the plaintiffs'

motion without prejudice and allowed the defendants to file an amended counterclaim remedying the pleading deficiencies described in the order.

The order of dismissal struck the defendants' allegations regarding third-party rights due to lack of standing. The remainder of the order addressed count VI of the defendant's counterclaim, which was for antitrust violations under the Sherman Antitrust Act and Clayton Act. This court found that the allegations of the defendants' counterclaim were too general to support antitrust violations. Count VI failed to identify what provisions of the antitrust statutes had been violated. More importantly, the defendants did not define the relevant market, allege that they were prevented from trading elsewhere in the market, satisfy the pleading requirements for conspiracy, or present facts to support a claim of boycotting. *See* Order at 10-15. The order concluded that, if the defendants did not plead their claims under count VI properly in an amended counterclaim, their counterclaim would be dismissed due to lack of subject matter jurisdiction. This is because the counterclaim does not arise from the same nucleus of operative facts as the complaint, the parties are not diverse, and count VI is the only claim that can possibly give rise to a federal question.

On May 2, 2001, the defendants filed their amended counterclaim. The plaintiffs now seek to dismiss those claims, arguing that the defendants have failed to remedy the pleading deficiencies outlined in the court's order of March 21, 2001.

### Standard for Motion to Dismiss

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting

5

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1983). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994) (citation omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### Analysis

In support of their motion to dismiss, the plaintiffs contend that the deficiencies of the counterclaim remain unremedied in the amended counterclaim. According to the plaintiffs, "this Court granted plaintiff's motion to dismiss the counterclaim in its entirety [because] the Defendants had not properly alleged any of their claims." Pl. Mtn. at 2. The defendants correctly assert that this statement is without merit. This court did not grant the plaintiffs' motion to dismiss the entire

counterclaim because *all* of the defendants' claims were deficient. It granted the motion to dismiss because count VI, the only count supporting subject matter jurisdiction, failed to state a claim and, as a result, this court lacked jurisdiction over the remainder of the countercomplaint. Neither the order of March 21, 2001, nor this order discusses the merits of the defendants' state law-based counts. The court has examined only the allegations of count VI. The plaintiffs correctly argue, however, that the defendants have failed to state a claim for antitrust violations under count VI of their amended complaint. As a result, the plaintiffs' motion to dismiss the amended counterclaim is granted, and the countercomplaint must be dismissed in its entirety for lack of subject matter jurisdiction.

**I.   Count VI**

Count VI of the counterclaim is for violation of the Sherman and Clayton Acts, 15 U.S.C. §§ 1-7, 12-26. The basis of this claim is the defendants' allegations that the plaintiffs entered into an illegal conspiracy to set minimum, uniform tariffs to establish a monopoly and to avoid competition with one another. *See* Def. Am. Ccl. at ¶¶ 46-48. The defendants also contend that, as the leader of the plaintiffs, Support Trucking threatened to file the instant lawsuit against the defendants when the defendants attempted to voice their economic situation. *See* Def. Ccl. at ¶ 49. In the order of March 21, 2001, this court found the defendants' allegations under count VI insufficient to state a claim for a violation of the antitrust laws. The court carefully laid out the points that were to be rectified in the defendants' amended counterclaim; however, the defendants have added only seven sentences to count VI of the amended counterclaim, which do nothing more than restate in more verbose language the allegations contained in the original counterclaim. As

7

explained below, the defendants have failed to remedy the deficiencies identified in the order of March 21, 2001.

### A. Theories of Recovery

The order of March 21, 2001, stated that the defendants failed to clarify under which theories of recovery they are proceeding. Order at 9-10. In the amended complaint, it still is not clear whether the defendants are proceeding under theories of price fixing, conspiracy, monopoly, boycotting, a combination of these, or some other antitrust violations. The defendants continue to ask the court to embark upon a fishing expedition throughout the amended counterclaim in order to extract the theories of recovery and the elements of each theory. Having been made aware of this deficiency by a previous order, the defendants had ample opportunity to identify their theories of recovery in their amended counterclaim, yet they have failed to do so.

### B. Adverse Effect On Competition

The order of March 21, 2001, informed the defendants that it was not clear that the facts of this case involved antitrust violations because "there is no allegation in the complaint that the defendants were prevented from trading elsewhere in the market. What is missing from the defendants' complaint is any allegation of an adverse effect on competition." Order at 11. The defendants allege that the five plaintiff brokers--Austin Tupler Trucking, Inc., Juner Hauling Corp., Retranca Equipment and Trucking Corp., Truck Brokerage by National, Inc., and Eastman Aggregates--have agreed amongst themselves to set the same high price for truck brokerage services. This allegation is not tantamount to a claim that trade throughout the market is being prevented by the plaintiffs' conduct. As the counterclaim states, at least twenty-five other truck brokers exist. Ccl.

at ¶ 5. If there are at least five times as many brokers as there are plaintiffs servicing the market, it is not clear how the five plaintiffs' conduct could have had an adverse effect on the defendants and the truck brokerage market that is cognizable under antitrust laws. At most, the defendants have alleged that the plaintiffs' agreement to set high prices has prevented competition amongst the five plaintiffs. Their antitrust claims are deficient because they do not specify how or whether the conduct of the five plaintiffs has affected other brokers in the market. *See Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1548-49 (S.D. Fla. 1995) (finding that plaintiffs did not set forth requisite adverse effect on competition necessary to establish antitrust violation where complaint discussed only competition within defendant's corporation, not entire market). The defendants' failure to allege that the plaintiffs' conduct has had an adverse effect on competition throughout the truck brokerage market compels the dismissal of their antitrust claims.

C.     **Relevant Market**

The order of March 21, 2001, found the defendants' complaint to be deficient because it did not define the relevant market allegedly affected by the plaintiffs' actions. Order at 12 n.2. Nowhere in their amended complaint did the defendants attempt to rectify this problem. It is well established that, in order to bring a monopolization claim under the Sherman act, a plaintiff must define the relevant market. *See U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993). Dismissal of a claim is proper under Federal Rule of Civil Procedure 12(b)(6) if the description of the relevant market is legally insufficient; that is, if it fails to define the market by both product and geographic dimensions. *See In re America OnLine, Inc.*, No. 00-1341-MD, 2001 WL 1243421 *8 (S.D. Fla. 2001) (dismissing antitrust claim where plaintiff failed to identify product and geographic

9

scope of relevant market). In their counterclaim and amended counterclaim, the defendants arguably define the relevant market as "truck brokers." Although the counterclaim repeatedly refers to "brokers", nowhere is the term defined in terms of product or geographic scope. Accordingly, to the extent the defendants have attempted to bring antitrust claims that require relevant market to be pled as an element, those claims must fail.[2]

### D.   Conspiracy

The court's previous order found that the defendants' allegations regarding conspiracy were too vague to state a claim upon which relief could be granted. Order at 12-14. As with their original counterclaim, the defendants have failed to set forth the dates of the alleged conspiracy; the nature and acts constituting the conspiracy; who, besides Support Trucking, made any statements; and where the alleged conspiracy took place. The amended counterclaim merely states that the plaintiffs have conspired with each other, for example, by knowing "what every other broker pays" and fixing prices with each other "for years and years". Am. Ccl. at ¶ 47. Such conclusory allegations of conspiracy are insufficient to survive a motion to dismiss. *See Aquatherm Indus., Inc. v. Fla. Power and Light Co.*, 971 F. Supp. 1419, 1429-30 (M.D. Fla. 1997) (finding that allegations regarding antitrust conspiracy were insufficient to survive motion to dismiss, despite plaintiff's contentions that specific facts would be identified in discovery); *Ben Sheftall Distrib. Co. v. Mirta de Perales, Inc.*, 791 F. Supp. 1575, 1579 (S.D. Fla. 1992) ("conclusory allegation of conspiracy to restrain trade will not survive a motion to dismiss"). As a result, the defendants' conspiracy claims must be

---

[2] As discussed in subsection I, A, above, it is not clear under what theories the defendants are proceeding in their counterclaim, so this order includes a discussion of relevant market to the extent it is applicable.

dismissed.

### E.  Boycotting

As discussed in the order of March 21, 2001, a boycott involves an inducement for companies not to do business with a competitor. *See Gould v. Sacred Heart Hosp. of Pensacola*, No. 86-4392, 1998 WL 995313 *23 (N.D. Fla. 1998). The facts alleged in support of the defendants' amended counterclaim do not satisfy this description of a boycotting claim because they do not arise from a refusal to deal. Instead, they involve the plaintiffs' alleged scheme to set high prices and threats to file a lawsuit to prevent the defendants from striking. Such allegations do not state a claim for boycotting. *See Uniforce Temp. Personnel, Inc. v. Nat'l Council on Comp. Ins., Inc.*, 87 F.3d 1296, 1300-01 (11th Cir. 1996) (finding that plaintiff's claims involving defendants' conspiracy to set excessive insurance premiums and fees, thus allegedly forcing plaintiff to pay higher premiums, did not constitute boycott because acts did not involve refusal to deal). As a result, the defendants' boycotting claim must be dismissed.

## II.  Jurisdiction

In its previous order, the court advised the defendants that "[f]ailure to remedy the pleading deficiencies in count VI will result in a dismissal of the entire counterclaim." Order at 16-17. Because count VI was the only claim supporting federal jurisdiction, and the remaining eleven counts of the amended counterclaim are based on state law, the defendants' amended counterclaim is hereby dismissed due to lack of subject matter jurisdiction.

It is therefore:

**ORDERED AND ADJUDGED THAT:**

11

1.  The plaintiffs' motion to dismiss (DE #153) is GRANTED, and the defendants' counterclaim is DISMISSED WITH PREJUDICE.

2.  A telephonic status conference is hereby set for **Tuesday, December 18, 2001, at 8:45 a.m.**, in order to determine whether this case shall require further supervision by the court. **The plaintiff shall initiate the telephone call.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20 day of November, 2001.

THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:

Magistrate Judge Simonton
Charles S. Caulkins, Esq.; One Financial Plaza, Ste. 2300; Ft. Lauderdale, FL 33394
Richard Diaz, Esq.; 2701 SW 3d Ave.; Miami, FL 33127-2335
Hosey Hernandez, Esq.; 2701 S. Bayshore Dr., Ste. 602; Coconut Grove, FL 33133